354 So.2d 156 (1977)
BOARD OF COMMISSIONERS OF the CADDO LEVEE DISTRICT, Plaintiff-Appellee-Relator,
v.
S. D. HUNTER FOUNDATION et al., Defendants-Appellants-Respondents.
No. 59483.
Supreme Court of Louisiana.
December 19, 1977.
Rehearing Denied January 27, 1978.
*158 Glenn E. Walker, Burnett, Sutton, Walker & Callaway, Shreveport, for plaintiff-appellee-relator.
W. Scott Wilkinson, Wilkinson, Carmody & Peatross, Shreveport, for defendants-appellants-respondents.
TATE, Justice.
By this petitory action, the plaintiff levee district claims title to some 83 acres of land lying between Twelve Mile Bayou and a large tract of plantation property owned by the defendants. The trial court recognized the levee district's title to the acreage, but the court of appeal reversed. 342 So.2d 720 (La.App. 2d Cir. 1977).[1] It held that the defendants had acquired title to the disputed strips by ten years' acquisitive prescription.
Principal Legal Issues
We granted certiorari, 344 So.2d 3 (La.1977), primarily to review the intermediate court's finding that the defendants had acquired title by ten years' possession through acquisition in good faith and by just title. La.C.C. Art. 3478.
We are particularly concerned with the issue of the good faith, La.C.C. Art. 3479(1), of a purchaser who acquired by an act of sale which expressly warranted title to some of the property purchased, but which was expressly without warranty as to other property conveyed by the same act of sale. As to the latter property, to which the seller had no title whatsoever, the issue concerns whether and to what extent the good faith of the purchaser is to be presumed. La.C.C. Art. 3481.
As will be set forth fully below, the principal legal issues we decide are:
1. Under the circumstances noted, a purchaser is not presumed to be in good faith. (See below: "The Effect of a Partial Non-Warranty Deed on the Purchaser's Good Faith," in Part I (The Disputed George Tract) of the opinion. 354 So.2d 161.)
2. Acquisitive prescription in favor of a possessor is interrupted by construction of a pipeline by the owner's grantee and the grantee's exercise of corporeal rights for more than a year; and prescription is interrupted as to the whole of the owner's tract, not just the portion across which the pipeline was constructed. (See below: "Interruption of Prescription by Mississippi River Fuel Corp. Right of Way" in Part II (The Disputed Powell Tract) of the opinion. 354 So.2d 165.)
3. A statute was enacted which barred acquisitive prescription from running against levee districts. Although subsequently repealed, its enactment had the effect of extinguishing claims of acquisitive prescription founded on pre-enactment possession which had not vested at the time of enactment. (See below: "Levee Districts: Acquisitive Prescription Statutes," in Part II (The Disputed Powell Tract) of the opinion. 354 So.2d 167.)
*159 Factual Context
The dispute concerns two strips of land (The Disputed Powell Tract and the Disputed George Tract) lying between Twelve Mile Bayou (the Soda Lake Canal) and the government meander line (the traverse line of Soda Lake). This line delineates the limits of what was initially swamp or overflowed lands in the Soda Lake area. See plat below at 354 So.2d 164.
The lands between the traverse line and the bayou originally belonged to the federal government. The 1850 Swamp Land Grant Act, 43 U.S.C. Section 982, had allowed the states to select and take title to swamp and overflowed lands of the United States. See Madden, Federal and State Lands in Louisiana, Sections 3, 23, 43 (1973). Louisiana had taken title to certain of these lands in Caddo Parish, including the tracts presently in dispute. Act 74 of 1892. In 1901, by formal act the state conveyed title to the plaintiff levee district the tracts presently in dispute (along with all other acreage in the area lying between the bayou and the traverse line). The district has never transferred record title to these strips.
The defendants (The S. D. Hunter Foundation and the widow of S. D. Hunter) claim title to these two tracts on the basis of acquisitive prescriptions of ten and thirty years. S. D. Hunter, their predecessor in title, had acquired the parent tracts of which these strips form part by acts of sale in 1948 (the 635-acre Powell Tract) and in 1951 (the 223-acre George Tract). These acts conveyed the lands outside of the traverse line (which mark the limits of the former swamp land), with full warranty of title and with precise description. (It may here be added that Hunter's vendors had apparent record title to these other lands, which were south and west of the traverse line.)
However, the conveyance of the lands on the bayou side of the traverse line (i. e., north and east of it) were described differently in each of Hunter's acquisition deeds, as will be set forth more fully below. Also, as will be shown, the overflowed lands (i. e., the levee district property north and east of the traverse line, which was subject to periodic overflow from the bayou) were conveyed by warranty sales of a different nature than the express warranties applicable to the other property conveyed by the same deeds.
The properties involved in these proceedings are located in Township 19 North, Range 15 West, Caddo Parish. More particularly, the two tracts in dispute are: (I) a strip on the bayouside of the traverse line in Section 24, containing about 37 acres (the "Disputed George Tract", EFG on plat); and (II) a nearby strip in Sections 13 and 14 between the Twelve Mile Bayou and the traverse line of Soda Lake (which marks the limits of the former swamp lands), allegedly containing about 46 acres (the "Disputed Powell Tract", ABCD on plat).

I. The Disputed George Tract

In 1951, S. D. Hunter purchased the George tract from Walter George et al. The acts of sale conveyed "That portion of the Northwest Quarter (NW ¼) lying South and West of the traverse line of Soda Lake [less 11 acres]" and "The Southwest Quarter [less 50 acres], all in Township 19 North, Range 15 West, comprising 223 acres." This was the George tract proper, to which the Georges held apparent record title.
The conveyance of this George-tract property (unlike the conveyance of the Disputed George Tract within the same deed, see below) was made "with full guarantee of title, and with complete transfer and subrogation of all rights and actions of warranty against all former proprietors of the property herein conveyed, together with all rights of prescription, whether acquisitive or liberative, to which the said vendors may be entitled." The vendors further reserved one-half of the mineral rights to this property.
*160 After conveying the George tract proper with express and full warranty title, and reserving one-half of the mineral interests as to it (only), the deed continued (conveying the Disputed George Tract without warranty):
"Vendors further declare that they do by these presents GRANT, BARGAIN, SELL, CONVEY AND DELIVER, without any warranty of title whatsoever, unto the said Vendee, the following described property located in Caddo Parish, Louisiana:
"That portion of the Northwest Quarter (NW¼) of Section 24, Township 19 North, Range 15 West lying generally North of the traverse line of Soda Lake."
The Disputed George Tract was on the bayou (northerly) side of the traverse line of Soda Lake. Governmental plats and all transactions pertinent noted this line as marking the southerly limits of the levee district overflow lands conveyed to it by the State.
The Disputed George Tract was immediately adjacent to (northerly of) the other land in the Northwest Quarter of Section 24 to which the Georges held record title. However, as the court of appeal noted, the evidence reflects insignificant, if any, prior possession of this levee district land by the Georges or their predecessors in title.
Ten Years' Acquisitive Prescription
The sole arguable ground for the Hunter defendants' claim to title of the Disputed George Tract is based upon S. D. Hunter's possession of the tract for ten years after his alleged good faith acquisition by this 1951 sale. "He who acquires an immovable in good faith and by just title prescribes for it in ten years. * * *." La.C.C. Art. 3478.
La.C.C. Art. 3479 provides that, to acquire ownership by this prescription, "four conditions must concur:
"1. Good faith on the part of the possessor.
"2. A title which shall be legal, and sufficient to transfer the property.
"3. Possession during the time required by law, which possession must be accompanied by the incidents hereafter required.
"4. And finally an object which may be acquired by prescription."
The plaintiff levee district concedes that a non-warranty sale may be a "just title" for purposes of acquisition of ownership by this prescription. Nevertheless, it contests the "good faith" of the purchaser, who in a single conveyance acquired certain lands with express warranty, but the disputed land (to which his vendors had no title and little, if any, possession) expressly without warranty, considering also that the deed reserved the vendor's mineral interest only to the warranted title and not to the disputed strip.
A possessor in good faith is one who has "just reason to believe himself the master of the thing which he possesses, although he may not be in fact . . ." La.C.C. Art. 3451. Bad faith possession is possession as owner, but with the possessor having knowledge that he had no title or that his title is defective. La.C.C. Art. 3452. "Good faith is always presumed in matters of prescription; and he who alleges bad faith in the possessor, must prove it," La.C.C. Art. 3481.
Excellent analyses of the jurisprudence on the issue, with comprehensive citation and summary, are set forth in Johnson, Good Faith as a Condition of Ten Year Acquisitive Prescription, 34 Tul.L.Rev. 671 (1960) and in the Comment, The Ten-Year Acquisitive Prescription of Immovables, 36 La.L.Rev. 1000, 1001-05, 1011 (1976). In describing the nature of good and bad faith, (then Professor) Johnson states, 34 Tul.L.Rev. 673-75 (footnote citations included in brackets where appropriate):
*161 "Unlike moral good faith or moral bad faith, which is solely subjective, legal good faith or legal bad faith is both subjective and objective. Concisely stated, good faith or bad faith is a state of mind indicated by acts and circumstances. In other words, the good faith or bad faith of a particular purchaser must be determined by the particular facts of each case. [See Land Development Co. v. Schulz, 169 La. 1, 124 So. 125 (1929); Hall & Turner v. Mooring, 27 La.Ann. 596 (1875); Franz v. Mohr, 4 So.2d 584 (La.App.1941).] There is no rule of law that categorizes the acts and circumstances that will be considered in good faith as opposed to those acts and circumstances that will be considered in bad faith: the purchaser must acquire the property from one whom he has `just reason to believe' to be the owner; * * *
"Having `just reason to believe' is the same thing as having an `honest belief' that the seller is the owner of the property which he is selling. `Just reason to believe' means that the purchaser has reasonable grounds to believe that the seller is the owner of the property which is being transferred although there is a defect in the title. That is to say, if his grounds of belief are such that a man of ordinary business experience would say that the seller is the owner of the property, the purchaser is then in good faith. [See Harrill v. Pitts, 194 La. 123, 193 So. 562 (1940); Smith v. King, 192 La. 346, 188 So. 25 (1939); Nethery v. Louisiana Cent. Lumber Co., supra [175 La. 753, 144 So. 486 (1932)]; Land Development Co. v. Schulz, 169 La. 1, 124 So. 125 (1929); Scott v. Dickson, 148 La. 967, 88 So. 235 (1921); Delouche v. Rosenthal, 143 La. 581, 78 So. 970 (1918); * * *] On the other hand, if the purchaser has reason to doubt the validity of the title being acquired from the seller, he is in bad faith. To explain, the purchaser is in bad faith if he acquires the property when he knows that the seller does not own the property, or when the facts and circumstances are such that a man of ordinary business experience would say that the seller is not the owner of the property. . . . Bel v. Manuel, 234 La. 135, 99 So.2d 58 (1958); Wise v. Watkins, 222 La. 493, 62 So.2d 653 (1952); Juneau v. Laborde, 219 La. 921, 54 So.2d 325 (1951); Louisiana Truck & Orange Land Co. v. Page, 199 La. 1, 5 So.2d 365 (1941); Fradella v. Pumilia, 177 La. 47, 147 So. 496 (1933); Southwestern Gas & Elec. Co. v. Nowlin, 164 La. 1044, 115 So. 140 (1927); Industrial Lumber Co. v. Earque [Fraque], 162 La. 793, 111 So. 166 (1926); Victoria Lumber Co. v. Dawson, 159 La. 848, 106 So. 327 (1925); Scaife v. Jones, 156 La. 5, 99 So. 890 (1924); Liles v. Pitts, 145 La. 650, 82 So. 735 (1919); * * *.]"
Effect of a Partial Non-Warranty Deed on the Purchaser's Good Faith
Our early jurisprudence held that a non-warranty sale of the vendor's right, title and interest in his property disclosed a defect in the title, thus putting the purchaser in bad faith (as well as defeating the just title requirement). E. g., Reeves v. Towles, 10 La. 276 (1836); Eastman v. Beiller, 3 Rob. 220 (La.1842). See Comment, The Legal Effect of Quitclaim Deeds in Louisiana, 23 Tul.L.Rev. 533, 537-40 (1949).
The present jurisprudence, however, is that a quitclaim or non-warranty deed by itself is insufficient to place the purchaser on inquiry and make him a bad faith purchaser. Smith v. Southern Kraft Corporation, 202 La. 1019, 13 So.2d 335 (1943); Dupuy v. Joly, 197 La. 19, 200 So. 806 (1941); Perkins v. Louisiana Land & Exploration Co., 171 La. 913, 132 So. 499 (1930); Perkins v. Wisner, 171 La. 898, 132 So. 493 (1929); Land Development Co. v. Schulz, 169 La. 1, 124 So. 125 (1929); Read v. Hewitt, 120 La. 288, 45 So. 143 (1907). In Schulz, cited above, we stated, 124 So. 128:
"A stipulation in an act of sale that the seller does not warrant the title might be regarded as an indication that the seller lacked faith in his title, but it is not an *162 indication that the buyer lacked faith in his title."
This last statement, however, is incomplete. If, aside from its non-warranty nature, the deed discloses a basis for doubting the vendor's ownership of the property conveyed, then the purchaser is not in good faith:
"Doubt as to ownership, or the right to alienate, is inconsistent with good faith, because doubt is the mean between good and bad faith. Good faith demands a firm and positive belief." Knight v. Berwick Lumber Co., 130 La. 233, 241, 57 So. 900, 903 (1912). "The acquirer's good faith must be absolute. If he had the slightest doubt concerning his author's ownership, he must be deemed to be in bad faith." Planiol, Civil Law Treatise, Vol. 1, No. 2667, p. 581 (LSLI translation, 1959). See also Aubry & Rau, Property, Section 218, pp. 363-65 (2 Civil Law Translations, LSLI, 1966).
Thus, where a deed itself indicates that a seller may not own the entirety of the property conveyed, the buyer is not presumed (see La.C.C. art. 3481) to be a purchaser in good faith. Bel v. Manuel, 234 La. 135, 99 So.2d 58 (1958). If the deed gives the purchaser notice of any fact which should "put a reasonably prudent person on guard, it then devolves upon him to pursue every lead and ferret out all the facts to the end that he may not purchase until he has complete information before him." Boyet v. Ferryman, 240 La. 339, 352, 123 So.2d 79, 83 (1960).
When other factors tend to show that the purchaser had knowledge of defects in the title, a quitclaim or non-warranty deed may, of course, be an indication of the purchaser's bad faith at the time of acquisition. Board of Com'rs of Pt. of N. Orl. v. Delacroix Corp., 274 So.2d 745 (La.App. 4th Cir. 1973); Board of Com'rs, Lafourche Basin Levee Dist. v. Elmer, 268 So.2d 274 (La.App. 4th Cir. 1972).
In the present George deed, the sellers expressly warranted title to property south and west of the traverse line, but in the same deed conveyed land north of the traverse line (the Disputed George Tract) expressly "without any warranty of title whatsoever."
In our view, this circumstance alone should have been sufficient, under the jurisprudence cited, to raise doubt in the purchaser's mind as to the vendor's title to the non-warranted title, so as to defeat his good faith at the time of its acquisition. Board of Com'rs of Pt. of N. Orl. v. Delacroix Corp., 274 So.2d 745 (La.App. 4th Cir. 1973). (A contrary view was reached in Nugent v. Urania Lbr. Co., 16 La.App. 73, 133 So. 420 (2d Cir. 1931); but it is disapproved, since Delacroix represents the better view and is more consistent with the decisions of this court above cited.) See also: Board of Com'rs for Lafourche Basin Levee District v. Elmer, 268 So.2d 274 (La.App. 4th Cir. 1972), certiorari denied, 263 La. 613, 268 So.2d 675 (1972) (* * * "not final.") (Noted, 34 La.L.Rev. 276 (1973)), 318 So.2d 914 (La.App. 4th Cir. 1975) (on remand for evidentiary purpose), certiorari denied 323 So.2d 131 (La.1975) (on merits).
We therefore find that Hunter was not a good faith purchaser of the Disputed George Tract at the time of his acquisition of it in 1951. The possession under the deed by him and his successors (1951-64) was not sufficient to afford prescriptive title by thirty years' possession without good faith. La.C.C. art. 3499. (As earlier noted, the evidence does not suggest that his predecessors in title had possessed it at all, with the possible exception of an incident in 1942.)
Accordingly, since the Hunters did not acquire title to the Disputed George Tract by prescription, we hold that the plaintiff levee district is entitled to be recognized as owner of it, in accordance with its title.

*163 II. The Disputed Powell Tract

In 1948, S. D. Hunter acquired by act of sale some 635 acres of land (The "Powell Tract") from Frank Hemenway (who in 1946 had acquired the same property from J. C. Powell). The seller expressly warranted title to some 529 acres, specifically described by governmental section, which were south of the traverse line of Soda Lake and outlined in red on a plat referred to. However, the same act conveyed certain other property (The Disputed Powell Tract) without express warranty, described as "all lands owned or claimed by vendor, contiguous to the land hereinabove described" and outlined in yellow on the plat.
The levee district notes this circumstance, as well as the additional fact that Hunter had found it advisable to secure from Hemenway's seller a quitclaim deed[2] to the Disputed Powell Tract prior to executing the sale from Hemenway. The levee district argues that therefore we should find Hunter was not in good faith and should overrule the defendants' plea of ten years' acquisitive prescription, as did the district court.
We find it unnecessary, however, to decide whether or not Hunter was in good faith at the time he acquired the Disputed Powell Tract in 1948.[3] This is because we have found that the purchaser's possession under the 1948 deed was interrupted in 1952 before the requisite ten years' prescriptive possession had vested the purchaser's title.[4] The interruption occurred by the construction across the Disputed Powell Tract of a pipeline by the levee district's grantee and the grantee's continuous maintaining thereafter of a 20-25' wide right of way cleared through the tract. See below, "Interruption of Possession by Mississippi River Fuel Corp. Right of Way."
(We should, however, note that the Hunter defendants also claim prescriptive title by thirty years' adverse possession, La.Civ.C. arts. 3499, 3500. For reasons to be discussed below, we likewise find this claim to be without factual merit.
Factual Summary
The pleadings describe the Disputed Powell Tract as portions of Sections 14 and 13 "bounded on the South and West by the Soda Lake Traverse Line and the North and East by Twelve Mile Bayou," as delineated in yellow on a certain plat, and "containing 46 acres more or less." (The maps in the record indicate its actual extent to be in excess of 100 acres.)
For convenience of discussion, we have reproduced roughly to scale some details reflected by plats and surveys in the record. This sketch, depicting the Disputed Powell Tract (ABCD), is as follows:
[See following illustration.]
*164 
*165 As will be more precisely detailed below, we find that Powell (the defendants' ancestor in title) took possession of the Disputed Powell Tract up to the 1923 Powell Fence some time before 1923. However, Powell did not take possession of the tract up to the bayouside fence (AC) until some time between 1925-30.
For reasons to be elaborated below, we find that the Hunter defendants cannot, for purposes of acquiring prescriptive title, cumulate with post-1944 possession any possession of the tract exercised before the enactment of Act 76 of 1938, which prohibited the running of acquisitive prescription against levee districts. See below, "Levee Districts: Acquisitive Prescription Statutes."[5]
We further find factually that the Hunter defendants did not bear their burden of proving by a preponderance of the evidence that their predecessors in title possessed any part of the tract for thirty years prior to 1938, so as to have vested title in them prior to enactment of the 1938 statute.
Interruption of Prescription by Mississippi River Fuel Corp. Right of Way
In 1951, the levee district granted a pipeline right of way to the Mississippi River Fuel Corporation. The plat attached to the act of sale shows that the pipeline crossed the Disputed Powell Strip and the bayou across its western edge. P-19. It was not far from a road and bridge servitude granted by the levee district just west of the disputed tract.
The testimony of three of the defendants' witnesses shows, without contradiction, that this 20-25' wide pipeline right of way was cleared and the pipeline was constructed in 1951 or 1952.[6] This evidence further shows that the right of way so cleared was regularly maintained thereafter as a clearly visible pathway through the wooded area in question. The plaintiff district's photographic evidence corroborates the clearly apparent nature of this corporeal invasion of the disputed strip.[7]
The record does not show that Hunter or his predecessors in title had granted Mississippi River Fuel a similar right of way over the affected or nearby property. Thus, the physical intrusion and continued possession of Mississippi River Fuel was solely by virtue of its grant from the levee district. It consequently interrupted Hunter's possession, as might not have resulted if such invasion could reasonably have been ascribed by Hunter to be based upon his own similar grant. Cf. Liner v. Louisiana Land and Exploration Co., 319 So.2d 766 (La.1975).
We hold, therefore, that this 1952 corporeal interruption of the possession by Hunter, maintained within visible bounds by consistent acts of physical invasion from 1952 onwards, were sufficient to interrupt the acquisition of prescriptive title by Hunter or his successors. "A natural interruption is said to take place when the possessor is deprived of the possession of the thing during more than a year, either by the ancient proprietor or even by a third person." La.C.C. art. 3517.
A possessor [i. e., Hunter] loses possession against his consent when he "allows it to be usurped and held for a year, without, during that time, having done any act of possession, or interfered with the usurper's possession." La.C.C. art. 3449(2). The levee district's grantee, by exercising acts of physical possession pursuant to its grant, exercised possession attributable to the levee district itself. La.C.C. art. 3433.
Furthermore, the possession of part of the tract by the record-owner's grantee constitutes an exercise of possession over the whole of the tract. La.C.C. art. 3437; Manson *166 Realty Company v. Plaisance, 196 So.2d 555 (La.App. 4th Cir. 1967). As held by Manson Realty, an intention by the owner to exercise possession over the whole of his tract is manifested by his grant of a pipeline servitude across it, when accompanied by the physical construction of the pipeline and continuous acts by the grantee thereafter maintaining the right of way over part of the tract.
Therefore, we conclude that Hunter's possession of the whole of the Disputed Powell Tract was interrupted by the 1952 construction of the pipeline by the levee district's grantee, together with its continuous acts thereafter in physically maintaining the pipeline right of way.
In reaching this conclusion, we were initially concerned whether the issue of possession thus decided was precluded by the circumstance that, in immediately preceding litigation, the Hunters successfully maintained a possessory action maintaining them in possession of the disputed acreage. S. D. Hunter Foundation v. Board of Commissioners, La.App., 286 So.2d 525.
As a consequence, the trial court judgment, affirmed by the intermediate court, ordered the levee district to assert any claim of its ownership within sixty days of the date its decree became executory. See La.C.Civ.P. art. 3662(2).
In accordance with that decree, the levee district timely asserted its ownership by the present petitory action.
If the levee district claiming record title had not done so, then that judgment would definitively have barred any further claim by the record owner to either ownership or possession of the tract insofar as based on circumstances preceding the judgment. La.C.Civ.P. art. 3662(2); Collier v. Marks, 220 La. 521, 57 So.2d 43 (1952); Yiannopoulos, 2 Civil Law Treatise (Property), Section 138, esp. pp. 425-26 (1966); Johnson, Real Actions, 35 Tul.L.Rev. 541, 554 (1961).
However, while the possessory action judgment under such circumstances precludes further litigation of ownership or possession except as permitted by the judgment, it does so only on the basis of the statutorily-authorized and judicially-decreed order to assert ownership within the stipulated period or forever be barred. As the decisions and scholarly writings recognize, the purpose is to free the property for transaction and commerce by recognizing the possessor's interest in the property as being free from any adverse claim of ownership by the defendant (unless he asserts it timely), usually the only other possible adverse claimant. Thus, the judgment may be definitive and res judicata, La.C.Civ.P. art. 1842, La.C.C. arts. 2286, 3556(31), as to the right of the alleged owner to institute a petitory action other than that permitted by the possessory action judgment.
Nevertheless, such judgment is not res judicata as to any issue of ownership or possession when raised in the judgment-authorized and timely-instituted petitory action filed in accordance with the decree. Res judicata requires identity in the two suits of object demanded, of cause, and of parties. La.C.C. art. 2286. Here, the possessory and petitory action had different objects (things demanded)i. e., to be maintained in possession, vs. to be recognized as owner, as well as different causespossession founded upon the juridical or material fact of undisturbed possession for one year or more, vs. ownership based upon record title. Nor does the present situation fall into one of the three narrow exceptions recognized to the doctrine of res judicata, which is strictly construed in Louisiana.
See: Mitchell v. Bertolla, 340 So.2d 287 (La.1976); Sliman v. McBee, 311 So.2d 248 (La.1975); Hope v. Madison, 194 La. 337, 193 So. 666 (1940); Dixon, Res Judicata in Louisiana since Hope v. Madison, 51 Tul.L.Rev. 611 (1977); O'Quin, Res Judicata"Matters Which Might Have Been Pleaded," 2 La.L.Rev. 491 (Part 1), 491 (Part 2) (1940).
The possessory-action holding that the Hunters were in possession of the disputed acreage did not, consequently, preclude a contrary conclusion in the petitory action timely-instituted to try title in accordance with the possessory-action judgment.
*167 We conclude, therefore, that the interruption in 1952 of Hunter's possession as alleged good-faith purchaser under the 1946 and 1948 acts of sale prevented his acquiring prescriptive title by ten years' possession.
Levee Districts: Acquisitive Prescription Statutes
The Hunter defendants alternatively claim to have acquired prescriptive title to the Disputed Powell Tract by thirty-years' adverse possession without title. La.C.C. arts. 3499, 3500. The evidence shows that predecessors in title possessed at least part of the area since 1923 or earlier.
Under applicable statutes, acquisitive prescription could run against the levee board only prior to 1938 and from 1944-64 (see below). The essential issue is whether a 1938 enactment barring acquisitive prescription against levee districts had the effect of interrupting the thirty years' acquisitive prescription then running in favor of Hunter's predecessors in titlethat is, of erasing pre-1938 possession for purposes of acquisitive prescription, or whether instead the acquisitive prescription was merely suspended from 1938 until 1944, when the 1938 enactment was repealed.
Article 19, Section 16, La.Constitution of 1921 provided (as did similar provisions in our 1898 and 1913 constitutions):
"Prescription shall not run against the state in any civil matter, unless otherwise provided in this Constitution or expressly by law." (A similar provision is contained in our present constitution. La.Const. of 1974, Art. 12, Section 13.)
In Haas v. Board of Com'rs of Red River, etc. v. Levee District, 206 La. 378, 19 So.2d 173 (1944), this court held that, for purposes of this constitutional provision, a levee district was a separate entity from the state. Thus, a levee district, although a state agency performing a state function, was subject (prior to the 1938 enactment) to losing the title to its land by a plea of ten years' acquisitive prescription, since it could validly alienate it.[8]
The Haas decision was foreshadowed by two earlier decisions. Upon the same distinction (between the state and its separate entity), they had held that liberative prescription could run against a levee district, despite the cited constitutional provision. Board of Com'rs, etc. v. Earle, 169 La. 565, 125 So. 619 (1930); Board of Com'rs, etc. v. Pure Oil Co., 167 La. 801, 120 So. 373 (1929). Their rationale is that the legislative creation of a separate entity which could sue and be sued permitted liberative prescription to run against suits by or against that entity.
*168 Apparently in reaction to these latter decisions, the legislature enacted Act 76 of 1938. This act provided that "prescription shall not run against levee districts," that "no levee district shall be divested of any. . . property or property right by virtue of any prescription or adverse possession whatsoever," and that "No Court . . . shall have authority to apply against any Levee District . . ., any prescription acquirendi causa or liberandi causa."
By Act 247 of 1944, this statute was expressly repealed, with the proviso: "provided nothing in this act shall be construed to affect pending litigation."
The district court held that the 1938 enactment interrupted any acquisitive possession previously accrued. Thus, only possession following the enactment's repeal in 1944 was available for the defendants' plea of thirty years' acquisitive prescription. The possession from 1944-64 was therefore insufficient to establish prescriptive title in the defendants.
The district court reasoned: By abolishing any cause of action based upon such adverse possession, the legislature extinguished any prescriptive rights previously accrued. The effect of the 1944 repeal of the enactment was to create a new cause of action (conceding the validity of the Haas holding) by which to acquire prescriptive title to levee board lands. Therefore, requisite possession to acquire by prescription commenced running only after the 1944 enactment.
The district court concluded that the 1938 enactment, with its 1944 repeal, did not merely suspend the running of acquisitive prescription from 1938-44. The causes of suspension stated by the code all concern an existing inability to enforce an existing right, e. g., because of minority, rather than any additional delay allowed to enforce a then non-existent right. La.C.C. arts. 3521-27.
For almost equally persuasive reasons, the court of appeal concluded that the legislative intent manifested by these two acts, in conjunction with Act 408 of 1964, La.R.S. 38:295,[9] was that prescriptive possession was merely tolled from 1938-44, and continued running again in 1944. The prescriptive possession continued until 1964, when the legislature again barred loss of levee district property by acquisitive prescription. The court pointed out that the 1938 enactment, with its complete repeal in 1944 (save only as to then pending litigation), was not similar to the code causes which interrupt prescription. La.C.C. arts. 3516-20. It felt that instead the circumstances here preventing accrual of prescriptive rights were more analogous to those which suspend prescription. La.C.C. arts. 3521-27.
Recognizing the forcefulness of the intermediate court's holding, we nevertheless ultimately conclude that the district court's interpretation of the effect of the 1938 enactment is more probably in accord with the legislative intent. At the time the statute was enacted, its legislative effect was to eliminate any previous prescriptive possession as a basis for acquiring title against levee districts, whether of one day or of 29.99 years' duration. The enactment's repeal in 1944 (save only as to pending litigationin which, in sole effect, the levee board was opposing prescriptive title sought to be acquired against it), does not manifest any intent to resurrect past-eliminated possession for purposes of completing the prescriptive acquisition newly authorized against levee districts.
Thirty Years' Acquisitive Prescription
Consequently, in view of the previous holdings of this opinion, to prevail in their plea of thirty years' acquisitive prescription, La.C.C. arts. 3499-3503, the Hunter defendants *169 must prove they possessed all or part of the tract for thirty years prior to 1938.
By the testimony of six witnesses, the Hunter defendants sought to prove possession of the Disputed Powell Tract for the requisite time as including all the land between the bayouside of the traverse line (BD) (this line was adjacent to property to which they and their predecessors had record title), and up to a fence line (AC) immediately adjacent to the bayou. This fenceline is allegedly the bayou boundary of the Disputed Powell Tract which was depicted on the 1946 plat incorporated in the 1948 act of sale by which Hunter acquired the land.
The present Hunter defendants are entitled to assert whatever prescriptive title their ancestors in title had acquired by thirty years' continuous and uninterrupted possession prior to 1938.[10] La.C.C. arts. 3493-95.
A major issue is just when the fence [AC] was first built on this bayou line and by whom.
The preponderance of the evidence undoubtedly shows that, at least as early as 1930, Powell built this fence to enclose levee district property possessed by him.
The defendants rely on testimony which, if accepted, shows that the fence was built much earlier than 1930. Before adverting to it, we find it appropriate to refer to evidence indicating the probable earliest date by which this fence was built.
In 1923, the levee district granted a surface lease to W. K. Henderson of 645 acres of its overflow lands lying between the bayou and the traverse line. The lease included by description and plat the Disputed Powell Tract in Section 14 (described as containing 94.3 acres). To the act of sale is attached a plat of survey of the areas leased, which was made on July 25, 1923. P-24.
This 1923 plat discloses that Powell had indeed constructed a fence enclosing part of the levee district lands on the bayouside of the traverse line. See plat above. This fence enclosed the "meadow land" immediately adjacent to Powell's tract (and noted as containing 51.9 acres), but it did not enclose the 47.4 acres between the meadowland and bayou, which included the wooded area immediately adjacent to the bayou. The survey does not reflect any other fence.
We conclude that the preponderance of the evidence shows that the additional fence along the bayou enclosing the woodlands as well (which the Hunter defendants mark the larger limits of their prescriptive title) was not built until after this 1923 survey. This is partially corroborated by the testimony of one of the defendants' witnesses (McCrady) that the bayouside fence was first started by Henderson (i. e., after Henderson received the 1923 lease from the levee district) and by the testimony of another (Carpenter) that he himself had built it for Powell some time between 1925-30.
On direct examination, Will McCrady (age 66 at the 1975 trial) had seemed to testify, on the basis of boyhood memories, that the Powell fence had always been maintained at the bayou's edge. On cross-examination, however, he testified that the fence had been commenced by Henderson but then "something happened. He quit it." Tr. 144. In 1923, when Henderson leased the acreage from the levee district, the witness was about 14 years of age.
The only other witness with specific knowledge concerning the building of the fence is Howard Carpenter. In 1921, he had moved onto the parent Powell tract, in a house about one-half mile from the disputed strip, when he was 9 years old. He had farmed and tended cattle in the disputed area. He has lived in the vicinity since 1921.
*170 Carpenter testified that he himself had built the fence for Powell between 1925 and 1930. Carpenter further testified, he had built it along the line of a former fence. His testimony further reflects that the present bayouside fence is maintained in the same location as the fence he built.
Thus, these two witnesses on cross-examination admitted that Powell or Henderson built the fence in the 1920's, despite their testimony on direct based on childhood memories that it was there earlier.
The only other of defendants' witnesses who testified as to the existence of the fence before 1923 was Walker Spillman. He was born in 1893 and was 82 years of age at the time of the trial. He testified that he had seen the bayouside fence when he went by at the age of "about" 15, i. e., in "about" 1908, or "in 1910 when I used to go along there after my cows down on that lake."
However, in describing the fence, he spoke of "the old place" being "fenced in" "and they was farming over in there. Cows was running on the outside then, everywhere in the woods." Under cross-examination, he admitted that "the woods were open and unfenced."[11]
We do not believe that this testimony suffices to prove by a preponderance of the evidence (i. e., more probably than not) that Powell built the bayouside fence as early as 1908. The evidence of defendants' witnesses shows, rather, that the fence was built between 1923 and 1930, except for the vague and indefinite testimony of an aged witness that he first saw it there when he was "about" fifteen (i. e., in "about" 1908) or "in 1910."
Likewise, with the possible exception of this witness (see footnote 11), there is no evidence whatsoever as to when Powell first took possession of the meadowland shown as enclosed by his fence in 1923.
The testimony of the witness referred to (see footnote 11) did not preponderantly prove that such possession commenced as early as 1908.
The Hunter defendants have not borne their burden of proving prescriptive title by thirty years' possession of all or any of the Disputed Powell Tract.

Decree
For the reasons assigned, we reverse the judgment of the court of appeal, and we reinstate and affirm the judgment of the district court in favor of plaintiff, the Board of Commissioners of the Caddo Levee District, and against the defendants, the S. D. Hunter Foundation and Mrs. Milryn M. Hunter, recognizing the plaintiff's title to and ownership of the following described property:
Two tracts of land forming a part of the Oak Ridge Plantation more particularly described as follows:
All that portion of Section 14 and the West Half of the Southwest Quarter of Section 13, Township 19 North, Range 15 West, bounded on the South and West by the Soda Lake Traverse Line and on the North and East by Twelve Mile Bayou also known as Soda Lake Canal, said property being delineated in yellow on plats annexed to a deed from Mrs. Mattie Bickham Powell to Sam D. Hunter, dated September 29, 1948, and recorded in Conveyance Book 581, Page 304, bearing instrument No. 34399, and plat attached to deed from Frank Hemenway, Jr. to Sam D. Hunter, dated October 5, 1948, and recorded in Conveyance Book 581, Page 311 of the records of Caddo Parish, Louisiana, bearing instrument No. 35398, containing forty-six (46) acres more or less. Also, a tract of land containing thirty-seven (37) acres more or less being that portion of the Northwest Quarter of Section 24, *171 Township 19 North, Range 15 West, Caddo Parish, lying North and East of the Traverse Line of Soda Lake.
All costs of the trial and appellate courts are taxed to the defendants.
COURT OF APPEAL JUDGMENT REVERSED, AND DISTRICT COURT JUDGMENT REINSTATED AND AFFIRMED.
SANDERS, C. J., dissents with written reasons.
SUMMERS, J., dissents.
MARCUS, J., concurs in part and dissents in part and assigns reasons.
MARCUS, Justice (concurring in part and dissenting in part).
I agree with the majority that the Hunters did not acquire title to the disputed George Tract by prescription; hence, the levee district is entitled to be recognized as owner of it in accordance with its title. However, I disagree with the majority in regard to its holding relative to the disputed Powell Tract. I consider the Hunter defendants acquired title to the disputed Powell Tract by thirty-years' adverse possession without title. La. Civil Code arts. 3499, 3500. It is my view that the 1938 enactment at the most only suspended the acquisitive prescription until the 1944 enactment.
Accordingly, I respectfully concur in part and dissent in part.
SANDERS, Chief Justice (dissenting).
The Board of Commissioners of the Caddo Levee District filed this petitory action to determine the ownership of two tracts of land. Defendants, S. D. Hunter Foundation and Mrs. Milryn M. Hunter, prevailed in an earlier possessory action. S. D. Hunter Found, v. Board of Com'rs, Caddo Levee D., La.App., 286 So.2d 525 (1973). In this petitory action, the trial court determined that the Levee Board was the owner. The Court of Appeal reversed, recognizing Hunter's ownership. Bd. of Com'rs etc. v. S. D. Hunter Foundation, La.App., 342 So.2d 720 (1977). I agree with the Court of Appeal.
In 1850, the federal government empowered states to select and take title to swamp and overflowed lands. Swamp Land Act, 43 U.S.C. § 982. Louisiana took title to certain land in Caddo Parish, of which these contested parcels form a part. Act 74 of 1892; Act 90 of 1894. In 1901, the State conveyed title to the Caddo Parish Levee District.
Defendants claim title to the two disputed areas, known as the Powell and George tracts, based on acquisitive prescription of ten and thirty years.

POWELL TRACT
James F. Powell acquired and farmed the Oak Ridge Plantation, of which the Powell tract forms a part, as early as 1866. In 1903, after a partition among the James F. Powell heirs, James C. Powell acquired and farmed the Oak Ridge Plantation. In 1946, James C. Powell sold property, including the Powell tract to Frank Hemenway, Jr. In 1948, Hemenway sold the property to S. D. Hunter. In 1962, the court placed Mrs. Milryn M. Hunter, Hunter's surviving spouse in community, and the S. D. Hunter Foundation, his universal legatee, in possession of the Powell tract and other of Hunter's properties after his May 16, 1960, death.
The Hemenway and Hunter conveyances provided a full warranty sale to their vendees of all property other than the Powell tract.[1] With regard to the Powell tract, each conveyance provided that:
"The vendor furthermore transfers, assigns, conveys and delivers to vendee herein all lands owned or claimed by vendor, either legal or equitable, contiguous *172 to the land hereinabove specifically described, whether the same be inside or outside the said specific description, or inside or outside of the sections, township or range hereinabove described, and whether the same be held under fence by vendor or not, and whether such lands be more or less than the estimated acreage herein conveyed of 635 acres.
"The property herein conveyed being more particularly shown delineated in red and yellow on plat attached to deed from James C. Powell to this vendor . . ."

GEORGE TRACT
In 1951, Walter George sold S. D. Hunter the property contiguous to the George tract with full warranty.[2] However, in this same transaction, Walter George transferred the George tract without warranty, stating:

*173 "Vendors further declare that they do by these presents GRANT, BARGAIN, SELL, CONVEY AND DELIVER, without any warranty of title whatsoever, unto the said Vendee, the following described property located in Caddo Parish, Louisiana:
"That portion of the Northwest Quarter (NW ¼) of Section 24, Township 19 North, Range 15 West lying generally North of the traverse line of Soda Lake."
In 1962, the court placed Mrs. Milryn M. Hunter, S. D. Hunter's surviving spouse in community, and the S. D. Hunter Foundation, his universal legatee, in possession of the George tract and other properties after his May 16, 1960, death.

TEN YEAR PRESCRIPTION
One mode of acquiring ownership of things is acquisitive prescription. LSA-C.C. Art. 3474. Acquisitive prescription is the continued possession of property over a legally determined period of time. Ten year acquisitive prescription requires:
"1. Good faith on the part of the possessor.
"2. A title which shall be legal, and sufficient to transfer the property.
"3. Possession during the time required by law, which possession must be accompanied by the incidents hereafter required.
"4. And finally an objection which may be acquired by prescription." LSA-C.C. Art. 3479.

*174 GOOD FAITH
A possessor in good faith is one who has "just reason to believe himself the master of the thing which he possesses, although he may not be in fact . . ." LSA-C.C. Art. 3451. Bad faith possession is possession as owner, but with the possessor having knowledge that he has no title or that his title is defective. LSA-C.C. Art. 3452. Good faith is always presumed in matters of prescription; and he who alleges bad faith in the possessor must prove it. LSA-C.C. Art. 3481.
With reference to the Powell tract, plaintiff alleges that S. D. Hunter was not in good faith at the time he acquired the property from Frank Hemenway, Jr. Plaintiff contends that Hunter's securing another deed to the property from Mrs. Mattie Bickham Powell, the widow and only heir of James C. Powell, Hemenway's ancestor in title, is evidence of Hunter's bad faith. Hunter obtained this deed one week prior to his purchase from Hemenway.
S. D. Hunter's good faith must exist only at the moment his possession is commenced in order to support the ten year prescription. LSA-C.C. Art. 3482. Thus, Hunter's good-or-bad faith status is determined at the time the Hemenway deed was executed, the deed upon which defendants claim prescriptive ownership.
At the time of S. D. Hunter's purchase from Hemenway, October 5, 1948, he had already secured a deed translative of ownership from Hemenway's predecessor in title's widow. It appears that Hunter may have doubted the validity of the widow's quitclaim transfer of September 29, 1948, and thus purchased the same property from Hemenway one week later. However, his doubt appears to relate to his purchase from Mrs. Powell, rather than to his second acquisition. Hunter's actions evidence a sincere attempt to secure the property from its owner. Evidence of his earlier purchase fortified Hunter's desire and belief that he obtained a title translative of ownership from the true owner of the property. In our opinion, his extra effort to negate the possibility of a claim from Hemenway's ancestor in title's widow does not impugn his good faith. There is no evidence that S. D. Hunter conducted a title search or had knowledge that his title from Hemenway was defective. The serious consideration of $60,000.00 paid to Hemenway attests to that fact.
This Court has held that the acquisition of title from two or more persons does not of itself preclude good faith on the purchaser's part. Dupuy v. Joly, 197 La. 19, 200 So. 806 (1941); Reeves v. Towles, 10 La. 276 (1836).
As the Court of Appeal noted, James C. Powell died within a few months before Hemenway sold the property to S. D. Hunter. Hunter acquired the quitclaim deed from Powell's widow about one week prior to his purchase from Hemenway. The court added: "One can only speculate why the quitclaim was acquired, but in any event, this fact is not sufficient to overcome the presumption of good faith."
Plaintiff further attacks Hunter's good faith by alleging that he attempted to purchase the property from the Levee Board in 1952. The only evidence which remains of Hunter's offer to purchase or inquiry relative to such a purchase reflects that Hunter was interested in some 201.51 acres in Section 14, Township 19 North, Range 15 West. It is unclear whether the Powell tract is included within the 201.51 acres. However, even assuming that the Powell tract is within the acreage sought to be purchased, and is evidence of Hunter's bad faith in 1952, Civil Code Article 3482 provides that "[i]t is sufficient if the possession has commenced in good faith; and if the possession should afterwards be held in bad faith, that shall not prevent the prescription." Thus, even assuming that S. D. Hunter attempted to purchase this same property from a third source several years after the Hemenway transaction, this subsequent action cannot bar his ten year prescription of the property in 1958. Bel v. Manuel, 234 La. 135, 99 So.2d 58 (1958); Goree v. Sanders, 203 La. 859, 14 So.2d 744 (1943); Wilfert v. Duson, 131 La. 21, 58 So. 1019 (1912). It suffices that S. D. Hunter's possession began in good faith.
*175 In order to rebut defendants' presumption of good faith, the Levee Board also attacks S. D. Hunter's belief as a reasonably prudent person that Hemenway was the owner under the facts with which Hunter was presented. Arnold v. Sun Oil Co., 218 La. 50, 48 So.2d 369 (1949); Knight v. Berwick Lumber Co., 130 La. 233, 57 So. 900 (1912). The Levee Board reasons that Hunter's previously discussed actions when coupled with the specific terms of the Hemenway transfer require a conclusion that Hunter was a bad faith purchaser. Specifically, the Levee Board argues that the transfer in the Hemenway deed to Hunter of the Powell tract was without warranty. Plaintiff argues that because they conveyance refers to the property in dispute separately and does not specifically mention a full warranty sale, that that portion specifically excluded from the full warranty paragraph of the deed is without warranty. Citing Board of Com'rs of Pt. of N. Orl. v. Delacroix Corp., La.App., 274 So.2d 745 (1973), the Levee Board argues that S. D. Hunter was in bad faith. This allegation relates also to the second element necessary for ten year prescription, just title.

JUST TITLE
The Louisiana Civil Code defines "just title" as "a legal and transferable title of ownership in the possessor." LSA-C.C. Art. 3483. A title which "by its nature would have been sufficient to transfer the ownership of the property, provided it had been derived from the real owners" is required. LSA-C.C. Art. 3485. Early cases held that a nonwarranty sale of the vendor's right, title and interest in his property disclosed a defect in the title, thus putting the purchaser in bad faith, as well as defeating the just title requirement. E. g., Eastman v. Beiller, 3 Rob. 220 (1842); Reeves v. Towles, supra.
The present jurisprudence, however, is that a quitclaim deed alone is insufficient to place the purchaser on inquiry and make him a bad faith purchaser. Smith v. Southern Kraft Corporation, 202 La. 1019, 13 So.2d 335 (1943); Perkins v. Louisiana Land & Exploration Co., 171 La. 913, 132 So. 499 (1930); Perkins v. Wisner, 171 La. 898, 132 So. 493 (1929); Land Development Co. v. Schulz, 169 La. 1, 124 So. 125 (1929); Read v. Hewitt, 120 La. 288, 45 So. 143 (1907). In Schulz, supra, we stated:
"A stipulation in an act of sale that the seller does not warrant the title might be regarded as an indication that the seller lacked faith in his title, but it is not an indication that the buyer lacked faith in his title."
When other factors tend to show that the purchaser had knowledge of defects in the title, a quitclaim deed can, of course, be considered with other relevant evidence to resolve the issue of the purchaser's good faith. Board of Com'rs of Pt. of N. Orl. v. Delacroix Corp., supra; Board of Com'rs, Lafourche Basin Levee Dist. v. Elmer, La.App., 268 So.2d 274, cert. denied, 263 La. 613, 268 So.2d 675 (1972).
I conclude that plaintiff has failed to carry his burden of proving S. D. Hunter's bad faith. LSA-C.C. Art. 3481; Harrill v. Pitts, 194 La. 123, 193 So. 562 (1940); Dupuy v. Joly, supra.
A deed is translative of ownership only if it describes with sufficient clarity the immovable sought to be acquired so that it may be identified. The Louisiana Civil Code requires that the title be "valid in point of form" and that it be "certain." LSA-C.C. Art. 3486(1)(2). Defendant secured titles, heretofore reproduced in Footnotes No. 1 and 2, upon which he was justified in believing that he was the owner of the properties now contested. The property in each is adequately described to allow its identification. The conveyances are such that the purchaser could reasonably believe that he had been conveyed a translative title to certain property.
The deeds to the Powell and George tracts were notarial acts of sale, complete and proper on their faces, and would have been sufficient to transfer the ownership of the property therein described had the titles been derived from the real owners. LSA-C.C. Arts. 3484, 3485. The instruments were valid in point of form, in that they *176 contained a conveyance clause, the description of the property sold, and the consideration and acknowledgment of receipt. Each was signed by the parties to the sale, the witnesses, and the notary. The instruments were certain so as to fix exactly the origin or basis of possession; and they were proved by production of the instruments, the originals of which were registered in the proper conveyance records. LSA-C.C. Art. 3486.
In my opinion, these deeds were "just titles," sufficient to support defendants' plea of prescription.

POSSESSION
Civil Code Article 3426 defines "possession" as "the detention or enjoyment of a thing, which we hold or exercise by ourselves, or by another who keeps or exercises it in our name." Moreover, the Civil Code requires "corporeal possession of the thing." LSA-C.C. Art. 3436. The possession necessary for acquisitive prescription must be continuous and uninterrupted, peaceable, public, and unequivocal. LSA-C.C. Art. 3487. The law presumes the possessor to have possessed as owner. LSA-C.C. Art. 3488.
The prescription of ten years must be commenced by corporeal possession, but if possession is begun corporeally, it may be continued by civil possession. LSA-C.C. Art. 3487(1). Corporeal or natural possession involves the physical detention of the thing, as by occupying a house, or cultivating the land. LSA C.C. Arts. 3428, 3430. Civil possession occurs when the possessor ceases to reside in the house or on the land which he occupied without intending to abandon the property. LSA-C.C. Art. 3429.
The sufficiency of the acts of possession depends on the character of the land. The jurisprudence recognizes that a possessor can possess only in a manner practicable under the circumstances, depending upon the nature of the land, its soil and surroundings, and its chief value. Boudreaux v. Olin Industries, 232 La. 405, 94 So.2d 417 (1957); Jacobs v. Southern Advance Bag & Paper Co., 228 La. 462, 82 So.2d 765 (1955); Hill v. Richey, 221 La. 402, 59 So.2d 434 (1952).
After S. D. Hunter's acquisition of the Powell tract in 1948, he farmed the property. In addition, he maintained the fences surrounding the Oakridge Plantation, of which the Powell tract formed a part. S. D. Hunter grazed cattle on the Powell tract, and hay for the cattle was cultivated on it and then baled. In addition, a spring on the Powell tract was also maintained by periodic "curbing" to allow watering of the Powell cattle.
On the George tract, the evidence establishes that after his acquisition in 1951, S. D. Hunter maintained and improved fences surrounding the tract, as well as grazing cattle on it until his death in 1960.
When S. D. Hunter's widow, Mrs. Milryn M. Hunter, and the S. D. Hunter Foundation, his universal legatee, were placed in possession under Civil Code Article 3493, they are permitted to add their own possession to that of their author. Whether they acquired by universal or particular, lucrative or onerous title, they may tack their possession to complete the requisite ten years for acquisitive prescription here pleaded. LSA-C.C. Art. 3493. Under Civil Code Article 3496, "[w]e do not consider as an interval between two possessions, that which takes place between the decease of the testator and the acceptance of the succession by the heir; the possession of the deceased being considered in law as continued in the person of his heir."
Thus, I conclude that the defendants' possession since S. D. Hunter's death, when cumulated with S. D. Hunter's possession, satisfies the requisite ten years for prescriptive title to the George tract. Similarly, I conclude that S. D. Hunter's 1948-1958 possession of the Powell tract satisfies the requisite possession of ten years for acquisitive prescription here pleaded.
In attempting to impeach defendants and their ancestors in title's peaceable, uninterrupted possession of the properties, the Levee Board notes that several rights of way and leases were granted by it on the *177 disputed areas during the defendants' and their ancestors in title's tenure. However, the record does not indicate that defendants or their ancestors in title were aware of these transactions or that actual use was made of the rights of way or leases.
Moreover, the corporeal possession of a title holder is not usurped by the mere civil or constructive possession of a third party. It is necessary that the third party show usurpation by corporeal possession. LSA-C.C. Art. 3449; Smith v. Arkansas Fuel Oil Co., 219 La. 982, 54 So.2d 421 (1951); Ernest Realty Co. v. Hunter Co., 189 La. 379, 179 So. 460 (1938).
It is well settled that a person in peaceable possession of property does not have to inspect the public records at intervals to determine whether someone else is claiming title to his property. Metairie Park v. Currie, 168 La. 588, 122 So. 859 (1929); John T. Moore P. Co. v. Morgan's Louisiana & T.R. & S.S. Co., 126 La. 840, 53 So. 22 (1910).
Additionally, the Levee Board notes defendants' and their ancestors' in title failure to pay taxes on the disputed tracts. This Court has held that assessment to the possessor and tax payment are not essential to acquire property by prescription. Jacobs v. Southern Advance Bag & Paper Co., 228 La. 462, 82 So.2d 765 (1955); Snelling v. Adair, 196 La. 624, 199 So. 782 (1940); Eivers' Heirs v. Rankin's Heirs, 150 La. 4, 90 So. 419 (1921).

AN OBJECT SUSCEPTIBLE TO PRESCRIPTION
The thing which is the object of prescription must be susceptible by its nature of alienation, and alienation of the thing must not be prohibited by law. LSA-C.C. Art. 3497. Plaintiff contends that defendants cannot prescribe property owned by a levee district.
"Prescription runs against all persons, unless they are included in some exception established by law." LSA-C.C. Art. 3521.
Plaintiff contends that the provisions of the State Constitution then in effect prohibited acquisitive prescription against the Levee Board. Article 4, § 2 and Article 19, § 16 of the Louisiana Constitution (1921). Article 4, § 2 provided in pertinent part:
"In all cases the mineral rights on any and all property sold by the State shall be reserved, except where the owner or other person having the right to redeem may buy or redeem property sold or adjudicated to the State for taxes."
Article 19, § 16 provided:
"Prescription shall not run against the State in any civil matter, unless otherwise provided in this Constitution or expressly by law."
Article 4, § 2 referred to leases by the State. I note that a comparison of the language in Sections 2, 12, and 13 of Article IV illustrates that when the framers intended that the restriction or limitation should apply to the State only as a separate entity from its political subdivisions, the word "State" alone was used, but where the limitation or restriction was intended to apply to the State and to all political subdivisions thereof, the intent was demonstrated by employing "The State, or any political corporation thereof."
Article 4, § 2 referred to the State. It is inapplicable to state boards and agencies. Stokes v. Harrison, 238 La. 343, 115 So.2d 373 (1959).
A constitutional provision which is clear and explicit is not subject to construction and should be applied according to the usual signification in which the words are generally understood. LSA-C.C. Arts. 13, 14; State v. Bradford, 242 La. 1095, 141 So.2d 378 (1961); State v. Clark, 186 La. 655, 173 So. 137 (1937); City of Shreveport v. Smith, 130 La. 126, 57 So. 652 (1912).
Thus, because Article 19, § 16 referred specifically to prescription against the State, that provision is similarly inapplicable. Haas v. Board of Com'rs of Red River, etc., 206 La. 378, 19 So.2d 173 (1944).
This Court has held that one could acquisitively prescribe property owned by a levee district. Haas v. Board of Com'rs of Red River, etc., supra; Board of Com'rs v. Earle, supra; Board of Com'rs of Caddo Levee *178 Dist. v. Pure Oil Co., 167 La. 801, 120 So. 373 (1929). However, in 1938, the Legislature passed Act 76 which provided in pertinent part:
"Prescription shall not run against any Levee District . . .
"As to [all] such lands and all rights therein, no Levee District shall be divested of . . . any property or property right by virtue of any prescription or adverse possession whatsoever.
"No court within the State of Louisiana shall have authority to apply, enforce or maintain against any Levee District . . . any prescription acquirendi cause or liberandi causa."
The Legislature repealed the above Act in 1944, in enacting Act 247 of 1944. Later, in 1964, the Legislature again declared that acquisitive prescription shall not run against any levee district of the State. LSA-R.S. 38:295.
During the ten year periods between 1948 and 1958 (Powell tract) and between 1951 and 1961 (George tract), there was no prohibition to the acquisitive prescription of property owned by the levee district. Prior to the passage of Act 408 of 1964 (LSA-R.S. 38:295) prescription ran against levee boards. Thus, during the crucial periods of possession in the present case, the property possessed by defendants and S. D. Hunter was susceptible of acquisitive prescription.
Since the defendants have satisfied all four requisites for the ten-year acquisitive prescription on both tracts of land in dispute, I conclude that the plea is well-founded.

THIRTY YEAR PRESCRIPTION
Moreover, I find, as did the Court of Appeal, that the thirty-year prescription is well-founded as to the Powell tract, if bad faith be assumed. At the time S. D. Hunter acquired the tract, the thirty year possession of his predecessor in title, James D. Powell, from 1903 through 1933 constituted acquisitive prescription necessary for James C. Powell's ownership of the Powell tract. The record reflects corporeal possession by defendants' ancestors in titles as early as 1908. In 1908, when witness Walker Spillman, then fifteen years old, remembered it, it belonged to James C. Powell. The witness remembered that that tract was under Powell's control and that Powell had farmed the property as well as grazed his cattle on it. Cotton and corn crops were cultivated on the low-lying property. The same testimony about crops and cattle grazing by the Powells was given by younger witnesses ranging in age from sixty-three to sixty-six. Thus, it is clear that the corporeal possession of the Powell tract was continued after James C. Powell's possession either by his heirs or vendee, Frank Hemenway, Jr., until S. D. Hunter's purchase in 1948. All witnesses with knowledge of that area during the past remembered specifically that the entire Oakridge Plantation was fenced and that the fence was maintained. Moreover, even the older witnesses who remembered as youngsters passing the fence and remember the fence as an "old fence" then.
Thus, after thirty years, James C. Powell owned the Powell tract by virtue of his prescriptive title. Although he did not transfer the title until 1946, when he transferred it to Frank Hemenway, Jr., that transfer was legally valid. Hence, in 1948, S. D. Hunter acquired a valid title from Hemenway.
In my opinion, the majority holding is inconsistent with the final judgment in the earlier possessory action between the parties (286 So.2d 525). In that action, the Hunter defendants were recognized as being in possession of the Powell tract. Yet, in the present action, the Court holds that the Hunter defendants are not in possession because of the construction of a pipeline under a grant from the record owners.
For the reasons assigned, I respectfully dissent.
NOTES
[1] See also earlier possessory action, in which the Hunter defendants were maintained in possession of the disputed acreage. S. D. Hunter Foundation v. Board of Commissioners etc., 286 So.2d 525 (La.App. 2d Cir. 1973).
[2] Contemporaneously recorded with the Hemenway-Powell deed was a quitclaim deed, dated a few days prior to the Hemenway-Hunter deed, which had been executed by the widow and sole heir of J. C. Powell. Powell had sold the entire tract to Hemenway in 1946 by the same description as Hemenway sold it to Hunter in 1948. This quitclaim deed conveyed Mrs. Powell's interest to the Disputed Powell Tract (only), described as delineated in yellow on a plat attached. (This was the same plat as had been attached to the Powell-Hemenway deed and incorporated by reference in the Hemenway-Hunter deed.) In holding Hunter was not in legal good faith at the time of his acquisition from Hemenway in 1948, the trial court relied upon this circumstance as indicating some doubt by Hunter as to the validity of Hemenway's title to the Disputed Powell Tract.
[3] This would require a determination of what effect, if any, should be accorded to the chief distinguishing feature between the George-Hunter deed and the Hemenway-Hunter deeds. The latter conveyed its disputed tract expressly without the express warranty accorded to other property transferred by the same deed, although (since not excluded) nevertheless with an implied warranty against eviction. La.C.C. art. 2501; Tomlinson v. Thurmon, 189 La. 959, 181 So. 458 (1938).
[4] Insofar as Hunter may tack his post-1948 possession to that of his vendor (Hemenway) under the 1946 Powell-Hemenway deed (see Footnote 2), the same conclusion results.
[5] As that section of the opinion will explain, by reason of statutory enactments, acquisitive prescription could run against levee districts only prior to 1938 and from 1944-64.
[6] See testimony of Schilling (Tr. 92), Phares (Tr. 104), and Carpenter (Tr. 121-22).
[7] See P-2 through P-7, introduced by stipulation as depicting the Mississippi River Fuel Corp. pipeline right of way as it runs through the Disputed Powell Tract "several hundred yards down in the disputed land." Tr. 136.
[8] The levee district asks us to overrule Haas as erroneously decided, an issue we do not reach.

It relies upon interpretations of La.Const. of 1921, Art. 4, Section 2, which prevents alienation after 1921 of state mineral interests. Decisions of this court have consistently held that, for purposes of this article, levee districts were a state agency, performing a state function and administering state lands; they were therefore subject to this provision preventing alienation after 1921 of mineral rights owned by the state. See, e. g., State ex rel. Board of Com'rs, etc. v. Grace, 161 La. 1039, 1044, 109 So. 830 (1926), and decisions which recognized alienations only because the effective date was prior to the 1921 constitutional bar: Lum Chow v. Board of Com'rs, etc., 203 La. 268, 13 So.2d 857 (1943); Schwing Lumber & Shingle Co., Inc. v. Board of Com'rs, etc., 200 La. 1049, 9 So.2d 409 (1942); Standard Oil Co. of Louisiana v. Allison, 196 La. 838, 200 So. 273 (1941); Barnett v. State Mineral Board, 193 La. 1055, 192 So. 701 (1939). See also: Yiannopoulos, 37 La.L.Rev. 317-18 (1977); Hardy, 24 La.L.Rev. 228-29 (1964); Note, 24 La.L.Rev. 416 (1964).
Accordingly, this constitutional prohibition of any alienation of mineral rights by the state after 1921, Lewis v. State, 244 La. 1039, 156 So.2d 431 (1963), likewise bars after 1921 divestiture through acquisitive prescription of a levee district's mineral interest in (state) lands owned by and administered by it. Shell Oil Co. v. Board of Com'rs of Pontchartrain Dist., 336 So.2d 248 (La.App. 1st Cir. 1976), cert. denied 338 So.2d 1156 (La.1976) ("No error of law."), Noted, 37 La.L.Rev. 317-18 (1977).
The functional distinction between the two lines of decisions probably revolves about the circumstance that in the Haas line, unless expressly barred by statute, levee districts were permitted to lose by acquisitive prescription what they could (at the time) validly alienate (unlike minerals after 1921), or could sue and be sued for (i. e., lands so conveyed or lost through acquisitive prescription). See 24 La.L.Rev. 420-21.
[9] La.R.S. 38:295 provides: "The prescription by which the ownership of property is acquired as defined by Article 3458 of the Louisiana Civil Code shall not run against any levee district of the State or against the Board of Commissioners of any levee district." La.C.C. art. 3458 provides: "The prescription by which the ownership of property is acquired, is a right by which a mere possessor acquires the ownership of a thing which he possesses by the continuance of his possession during the time fixed by law."
[10] In 1946, Hemenway acquired whatever title Powell possessed to the Disputed Powell Tract, which was outlined in yellow on an attached plat. In 1948, S. D. Hunter acquired by the same description: (a) whatever interest Powell had, by quitclaim deed from Powell's widow and sole heir; (b) the interest Powell had sold to Hemenway, by conveyance from Hemenway. In 1962, the present Hunter defendants were recognized as succeeding to S. D. Hunter's ownership and possession of the property by the judgment of possession in his estate.
[11] The probable interpretation of his testimony as a whole is that the fence he remembered was the interior Powell (1923) fence enclosing only the meadowland portion of the Disputed Powell Tract. By finding that prescription had not accrued prior to 1938, the trial court implicitly rejected Spillman's testimony, which attempted to show enclosure and possession earlier than 1923. We agree with this evaluation of the Spillman testimony, for the reasons indicated. As indicated, we further note that this testimony does not as a whole definitely indicate that Powell took possession of this meadowland as early as 1908.
[1] The conveyances from James C. Powell to Frank Hemenway, Jr. and from Frank Hemenway, Jr. to Sam D. Hunter relative to the prescriptive clauses and proper descriptions provisions are identical.

The conveyance from Frank Hemenway, Jr. to Sam D. Hunter provides in pertinent part:
"BE IT KNOWN, That this day before me, the undersigned authority, a Notary Public in and for the said Parish [Caddo], duly commissioned and sworn, came and appeared Frank Hemenway, Jr., husband of Rebecca Taylor Hemenway, a resident of Caddo Parish, Louisiana, who declared that he does by these presents GRANT, BARGAIN, SELL, CONVEY AND DELIVER, with full guarantee of title, and with complete transfer and subrogation of all rights and actions of warranty against all former proprietors of the property herein conveyed, together with all rights of prescription, whether acquisitive or liberative, to which said vendor may be entitled, unto SAM D. HUNTER, husband of Milryn M. Hunter, a resident of Caddo Parish, Louisiana, the following described property, to-wit:
"The South Half of the Northwest Quarter (S ½ of NW ¼), South Half of the Northeast Quarter (S ½ of NE ¼), and the Northwest Quarter of the Northeast Quarter (NW ¼ of NE ¼) of Section 23; the fractional East Half (E ½) of Section 14 lying South of traverse line of Soda Lake, the fractional West Half of the Northwest Quarter (W ½ of NW¼) of Section 14 lying South of the traverse line of Soda Lake, less one acre in the Northwest corner thereof, the fractional East Half of the Northwest Quarter (E ½ of NW ¼) of Section 14 lying South of the; traverse line of Soda Lake, less one acre in the Northwest corner thereof, the North Half of the Northwest Quarter of the Southwest Quarter (N ½ of NW ¼ of SW ¼) and the East Half of Southwest Quarter (E ½ of SW ¼) of Section 14; that part of the Southwest Quarter (SW ¼) of Section 13 lying South and West of the traverse line of Soda Lake: all of said above described property being situated in Township 19 North, Range 15 West, Caddo Parish, Louisiana.
"The vendor furthermore transfers, assigns, conveys and delivers to vendee herein all lands owned or claimed by vendor, either legal or equitable, contiguous to the land hereinabove specifically described, whether the same be inside or outside the said specific description, or inside or outside of the sections, township or range hereinabove described, and whether the same be held under fence by vendor or not, and whether such lands be more or less than the estimated acreage herein conveyed of 635 acres.
"The property herein conveyed being more particularly shown delineated in red and yellow on plat attached to deed from James C. Powell to this vendor, which deed was filed for record on April 29, 1946 in the Conveyance Records of Caddo Parish, Louisiana . . .
[2] The conveyance from Walter George to Sam D. Hunter provided:

"BE IT KNOWN, that this day before me, the undersigned authority, a Notary Public in and for the said [Caddo] Parish, duly commissioned and sworn, came and appeared WALTER L. GEORGE, husband of Mrs. Lucile Cloud George, MRS. SUSIE ROSE GEORGE RALIFF, wife of J. Paul Ratliff, and MRS. MATTIE LOU GEORGE BRASWELL, formerly the wife of Claude R. Braswell, from whom she is now divorced, all residents of Caddo Parish, Louisiana, who declared that they do by these presents GRANT, BARGAIN, SELL, CONVEY AND DELIVER, with full guarantee of title, and with complete transfer and subrogation of all rights and actions of warranty against all former proprietors of the property herein conveyed, together with all rights of prescription, whether acquisitive or liberative, to which said Vendors may be entitled unto SAM DOUGLAS HUNTER, husband of Milryn Mills Hunter, a resident of Caddo Parish, Louisiana, the following described property located in Caddo Parish, Louisiana:
"That portion of the Northwest Quarter (NW ¼) of Section 24 lying South and West of the traverse line of Soda Lake, less the West ten (10) acres of the Northwest Quarter of the Northwest Quarter (NW ¼ of NW ¼) and less one (1) acre in a square described as BEGINNING at a point 434 feet South and 788 feet East from the Northwest Corner of said Section 24, from which point of beginning run South 28 degrees 30 minutes West 210 feet to an iron pipe, run thence South 61 degrees 30 minutes East 210 feet to an iron pipe, run thence North 28 degrees 30 minutes East 210 feet to an iron pipe, run thence North 61 degrees 30 minutes West 210 feet to the point of beginning. It is agreed that the use of the surface of this one square acre shall be forever restricted to use as a cemetery only. The right of ingress and egress to this acre is reserved to the vendors.
"The Southwest Quarter (SW ¼) less the South fifty (50) acres of the East Half of the Southwest Quarter (E ½) of Section 24, all in Township 19 North, Range 15 West, comprising 223 acres.
"Vendors except from this sale one-half (½) of the mineral rights in and under the above described property, it being the intention of the parties hereto that the Vendee receive by these presents one-half (½) of the mineral rights in and under the above described property. It is understood that Vendors expressly reserve to themselves the whole of the mineral interests under the one square acre described above as a cemetery.
"Vendors further declare that they do by these presents GRANT, BARGAIN, SELL, CONVEY AND DELIVER, without any warranty of title whatsoever, unto the said Vendee, the following described property located in Caddo Parish, Louisiana:
"That portion of the Northwest Quarter (NW ¼) of Section 24, Township 19 North, Range 15 West lying generally North of the traverse line of Soda Lake.
"TO HAVE AND TO HOLD said described property unto said purchaser, his heirs and assigns forever.
"This sale is made for the consideration of the sum of SIXTEEN THOUSAND SEVEN HUNDRED TWENTY-FIVE AND NO/100 ($16,725.00) DOLLARS, cash in hand paid, the receipt of which is hereby acknowledged.
"The certificate of mortgage is hereby waived by the parties, and evidence of the payment of taxes produced.
"DONE AND PASSED at my office, in said Parish, in the presence of O. O. Bortuuck and W. G. Boyd, undersigned competent witnesses, and me, Notary, on the 16th day of November, 1951.
 "ATTEST:
 Is/ Witness 1st Walter L. George
 /s/ Witness /s/ Mrs. Susie Rose George Ratliff
 /s/ Mrs. Mattie Lou George Braswell
 /s/ Sam P. Bortuck
 NOTARY PUBLIC, in and
 for Caddo Parish, Louisiana"