274 So.2d 745 (1973)
BOARD OF COMMISSIONERS OF the PORT OF NEW ORLEANS
v.
DELACROIX CORPORATION et al.
No. 5190.
Court of Appeal of Louisiana, Fourth Circuit.
March 13, 1973.
*746 Phelps, Dunbar, Marks, Claverie & Sims, Sumter D. Marks, Jr., Charles M. Lanier, New Orleans, for plaintiff-appellee.
Wilkinson & Wilkinson, Hugh M. Wilkinson, Jr., New Orleans, for defendant-appellant Delacroix Corporation.
Sidney L. Shushan, New Orleans, for defendants-appellees Nylka Land Co., and others.
Perez, Fernandez & Seeman, Manual A. Fernandez, New Orleans, for defendant-appellee Percy J. McCarron.
William J. Guste, Jr., Atty. Gen., State of Louisiana, John M. Currier, Asst. Atty. Gen., for State of Louisiana as original defendant.
Before REGAN, BOUTALL, and BAILES, JJ.
BAILES, Judge.
This appeal arises from the judgment of the trial court rendered in this expropriation suit filed by the Board of Commissioners of the Port of New Orleans to acquire servitudes for the construction, maintenance and operation of the Mississippi River Gulf Outlet channel and continuing spoil disposal. The trial court rejected the claim of appellant, Delacroix Corporation, to ownership of Section 26, Township 15 South, Range 17 East, St. Bernard Parish, Louisiana. We find the judgment appealed from is correct, and we affirm.
The plaintiff, as the assuring authority for the acquisition thereof, was granted judgment awarding it the necessary servitudes upon payment of the just compensation, as determined by the trial court to the parties recognized as the owners of the affected property.
In this appeal, none of the parties contest the right of the plaintiff to expropriate the rights sought, nor do any of the parties now complain of the adequacy of the compensation awarded by the trial court.
The issue in this appeal is whether title to subject property is in the Delacroix Corporation (hereinafter referred to simply as Delacroix) or Nylka Land Company, Ltd., (Hereinafter referred to simply as Nylka), and its assigns.
Delacroix deraigns its title as follows:
United States to State of Louisiana (Swamp Land Act);
State of Louisiana to Lake Borgne Basin Levee District in 1895;
Lake Borgne Basin Levee District to George H. Randolph, May 26, 1906;
George H. Randolph to W. J. Schwab, May 26, 1906;
W. J. Schwab to Thomas P. Hanna, January 15, 1908;
Thomas P. Hanna to John W. Sherard, August 21, 1911;
John W. Sherard to Edward J. Conroy, August 24, 1912;
Edward J. Conroy to George H. Henderson, November 5, 1928;
George H. Henderson to Acme Land & Fur Co., November 24, 1928; and
Acme Land & Fur Co., to Delacroix Corporation, August 7, 1929.
*747 Delacroix alleges a supplemental chain of title consisting of the following conveyances:
William J. Schwab to John R. Perez, May 6, 1926;
John R. Perez to Acme Land & Fur Company, Inc., December 24, 1927.
Nylka's chain of title originates in a June 28, 1911 tax sale of the subject property for 1910 taxes assessed in the name of Thomas P. Hanna.
Delacroix asserts it has established a record title complete from the original transfer from the United States to the State of Louisiana to its acquisition from Acme Land and Fur Company, Inc.
Alternatively, that if the 1911 tax sale to Nylka had any adverse effect on the Delacroix title this adversity has been overcome and it has preserved its title through sole and continuous possession from 1929 (date of its acquisition to date, having possessed in excess of ten years in good faith under just title and also in excess of thirty years.
Further alternatively, that if during certain periods the subject land was in a status of adjudication for delinquent taxes to the State of Louisiana, all adjudications having now been redeemed, do not bar recognition of Delacroix's title under prescriptions of ten and thirty years.
Thus, Delacroix in its answer pleaded its record chain of title and alternatively pleaded ten and thirty years prescription.
Ten year acquisitive prescription of immovables is governed by Civil Code Articles 3478 through 3482.
Article 3451 of the Civil Code defines a good faith possessor as one "who has just reason to believe himself the master of the thing which he possesses, although he may not be in fact."
A bad faith possessor by Civil Code Article 3452 is one "who possesses as master, but who assumes this quality, when he well knows that he has no title to the thing, or that his title is vicious and defective."
Further, Article 3481 provides that "good faith is always presumed in matters of prescription; and he who alleges bad faith in the possessor, must prove it."
As was stated in Knight v. Berwick Lumber Co., 130 La. 240, 57 So. 900 (1912):
"To be in good faith, the possessor must have the positive belief that he is the true owner of the property he holds. If he doubts the validity of his title, his possession cannot be the basis of the prescription of 10 years. Gaines v. Hennen, 24 How. 553, 16 L.Ed. 770. Doubt as to ownership, or the right to alienate, is inconsistent with good faith, because doubt is the mean between good and bad faith."
It is particularly significant that Acme Land & Fur Company, Inc., in the act of conveyance by which Delacroix acquired the subject property, transferred other property under the following condition, namely:
"The above 3010 acres, more or less of the `Schwab Tract' now being sold, conveyed and delivered by vendor with full warranty as to title." (Emphasis added.)
whereas the transfer of the subject property which was accomplished by the immediately succeeding section of the description contained the following condition, to wit:
"The above 5132 acres, more or less, of the `Schwab Tract' now being sold, delivered and conveyed without any warranty whatever as to title." (Emphasis added.)
There is no testimony in this record which touches on the question of whether Delacroix examined or investigated the title to the subject property. We are persuaded that even without an examination or inquiry into the validity of the title the above quoted portion of the deed is sufficient to put Delacroix on notice that there was a deficiency in the title to subject *748 property. The fact which we allude to is that 3010 acres of land was conveyed "with full warranty as to title" and immediately following is the conveyance of 5132 acres "without any warranty whatever as to title."
We are cognizant of the principle that one is not required to examine the public records and thus ascertain and determine the validity of the title to immovable property he contemplates purchasing as a condition precedent to good faith. As was said by the court in Arnold v. Sun Oil Co., 218 La. 50, 48 So.2d 369, the purchaser may purchase without any investigation of the title, and if the four conditions of Article 3479 of the Civil Code are met, the requirement for the ten year prescription is met.
We believe, though, that herein Delacroix was put on notice that something was wrong or some element for good title was absent or some deficiency existed and that an investigation should be made to determine the quality of the title conveyed. This was sufficient to put a reasonable prudent purchaser on guard.
Acme Land & Fur Company, Inc., was aware of some deficiency in title for otherwise a portion of the property, including subject property would not have been conveyed without warranty of title. The consideration of the sale between Acme Land & Fur Company, Inc., and Delacroix was an exchange of all outstanding stock and an assumpsit of outstanding indebtedness. Also, it is noted from documents in the record that the chief executive officer of Delacroix at the time of this conveyance was previously the chief executive officer of Acme Land & Fur Company, Inc.
All of this was sufficient to put Delacroix on guard that there existed a deficiency in title. In the absence of an investigation to assess the title, the purchaser acted at its own risk and peril.
A title examination would have revealed that at the time Thomas P. Hanna sold to John W. Sherard the subject property on August 21, 1911, title thereto had already passed to Nylka through the tax sale.
Our conclusion is that the benefit of the ten year prescription provided for in Civil Code Article 3478 cannot be accorded Delacroix for the reason the first condition prescribed by Article 3479 is lacking, namely: "Good faith on the part of the possessor."
We now pass to a consideration of the plea of thirty years prescription.
Aside from some documentary proof in the form of auditor's reports of the financial condition of Delacroix through the years from 1929 to recent date which reflects that Delacroix did maintain a patrol force for the apparent purpose of cruising the various tracts of land owned by it, the only other proof of physical possession was the oral testimony of Mr. Sidney D. Torres and Mr. Adam Melerine.
The essence of Mr. Torres' testimony is that although he did not know the exact location of Section 26 (subject property), he knew that it was located south of Lake Athanasio; that the property in that area is not fit for any use except trapping; that he was aware of trapping in this area between 1955 and 1960 but has no knowledge of the identity of the trappers or for whom they were trapping. He further stated that prior to 1946 there was trapping everywhere in the area of Section 26 but there was no trapping from 1946 to 1955. At best Mr. Torres' testimony is vague and indefinite as proof of the extent of possession of property by Delacroix south of Lake Athanasio, and he admitted that he did not know the location of the subject property. His testimony that there existed two oyster camps on property south of Lake Athanasio is lacking in information as to who erected the camps and identity of the location.
The other witness, Mr. Adam Melerine, who at the time of trial was 73 years of age, testified that he had been in the employ *749 of Delacroix continuously since 1935. He identified his position as that of field superintendent. He testified that he had made an inspection of subject property for Acme Land & Fur Company, Inc., in September, 1927, the apparent purpose of which was to determine if it was worthwhile to trap this property; that the property identified as Sections 26, 34, 35 and 36, Township 15 South, Range 17 East was trapped from 1928 through 1935 by three trappers named by him.
His testimony is not clear as to what years the property was trapped after 1935, however, he stated that a number of storms had occurred from 1935 to recent years which destroyed the muskrat population. According to him, the property was not trapped from 1946 through 1951 but was trapped from 1952 through 1956, and that there was no activity on the property when there was no trapping.
He testified that he walked over the entire property of Delacroix every year until 1942 or 1943, and after that time he had other people do the walking.
It is clear that Delacroix erected no buildings on the land, did not graze the land as it was unfit for pasture, erected no monuments to delineate possession, and at no time was the property under fence. The land was best described as low, salt water marsh land. Although Mr. Melerine did testify that he erected signs on the property designating it as the property of Delacroix, this testimony is controverted by testimony of witnesses offered by Nylka.
Civil Code Article 3499 stipulates that:
"The ownership of immovables is prescribed for by thirty years without any need of title or possession in good faith."
And, Article 3500 of the Civil Code provides:
"The possession on which this prescription is founded must be continuous and uninterrupted during all the time; it must be public and unequivocal, and under the title of owner."
In applying the provisions of Articles 3499 and 3500, supra, to the facts as we find them to be, we conclude Delacroix has not sustained the burden of proving that it ever possessed Section 26, Township 15 South, Range 17 East, as owner, publicly and unequivocally, continuously and uninterruptedly for a period of thirty years.
Although the trial judge did not assign any written reasons for holding that Delacroix was not the owner of the subject property, on the basis of the record before us, we find the judgment appealed from is correct, and accordingly, is affirmed at appellant's cost.
Affirmed.