336 So.2d 313 (1976)
BISHOP HOMES, INC., et al.
v.
James A. DEVALL.
No. 10775.
Court of Appeal of Louisiana, First Circuit.
June 30, 1976.
Rehearing Denied August 27, 1976.
Writ Refused November 16, 1976.
*314 Cordell H. Haymon, Baton Rouge, for defendant-appellant.
William C. Bradley, Baker, for plaintiffs-appellees.
Before LANDRY, COVINGTON and PONDER, JJ.
PONDER, Judge.
Plaintiffs-appellees, Bishop Homes, Inc. and Robert Leland Morgan, are plaintiffs in this petitory action, seeking to be recognized as owners of a track of land described as the West One-Half (W ½) of Section 37, Township 9 South, Range 3 East, Southeastern District of Louisiana in Ascension Parish, containing forty-eight and one-tenth acres. The defendant-appellant, *315 James A. Devall, was admitted to be in possession of the entire tract.
Devall filed an exception of res judicata and equitable estoppel and expressly pleaded acquisitive prescription of ten and thirty years. The exceptions of res judicata and equitable estoppel were overruled. The exceptions of prescription were denied after trial on the merits.
The exceptions of res judicata and judicial estoppel were based upon the fact that in 1958 a suit was filed by the Morgan faction, in essence claiming ownership of the tract. This suit was subsequently dismissed because of abandonment. The exceptions were properly overruled. An abandoned suit cannot form the basis of a plea of res judicata, City of New Orleans v. Westwego Canal & Terminal Co., 206 La. 450, 19 So.2d 201 (1944). The same reasoning would apply to a plea of judicial estoppel.
Trial was held in District Court on February 1, 1974. However, because of failure of recording equipment, the case was tried again on April 2, 1974. On November 12, 1974, the trial court signed judgment recognizing plaintiffs-appellees as owners in indivision of the disputed tract. Devall has timely appealed suspensively. We reverse.
Louisiana Code of Civil Procedure Article 3651 provides that "The petitory action is one brought by a person who claims the ownership, but who is not in possession, of immovable property or of a real right, against another who is in possession or who claims the ownership thereof adversely, to obtain judgment recognizing the plaintiff's ownership." Louisiana Code of Civil Procedure Article 3653 provides, in part, that "To obtain a judgment recognizing his ownership of the immovable property or real right, the plaintiff in a petitory action shall: (1) Make out his title thereto, if the court finds that the defendant is in possession thereof . . .". According to Pure Oil v. Skinner, La., 294 So.2d 797 (1974), a plaintiff in a petitory action makes out his title when he proves his ownership either by an unbroken chain of valid transfers from the sovereign or an ancestor in title common with the defendant. Acquisitive prescription of ten or thirty years will suffice.
Plaintiffs-appellees attempted to prove their case by showing a valid record title, instead of by acquisitive prescription. They did not plead prescription, and when counsel for defendant timely objected to the introduction of evidence on this issue, plaintiffs-appellees admitted that they were limited to proving their case by valid record title. Nevertheless, the trial court admitted the evidence, solely for the restricted purpose of rebutting defendant-appellant's contentions of acquisitive prescription, expressly recognizing that the pleadings would not be enlarged.
The lower court held that "the plaintiffs established a clear and unbroken chain of title to the property in dispute going back more than one hundred years prior to the institution of this litigation."
We find this to be insufficient under Pure Oil Company v. Skinner, supra. There is no common ancestor in title. There is a gap in plaintiffs' chain of title from 1850 back to the original sovereign grant, on which there is considerable doubt since there is only a reference to a grant by "her majesty the Queen of Spain" to one Mathias Martinez. It is doubtful that the property descriptions in the earlier deeds include the property in litigation. The inclusion of the property in a partition sale after a succession in 1909 is of doubtful validity.
We find too that plaintiff relied entirely upon record title and that evidence objected to and admitted solely for the purpose of disproving defendant's possession did not have the effect of enlarging the pleadings. We therefore cannot accept plaintiffs' contention that they have proved title by ten and thirty years' prescription.
But even if it be held that plaintiffs have established their title either by record title or prescription it would give them little solace because defendant-appellant has acquired ownership of the disputed tract by ten year acquisitive prescription.

*316 Civil Code Article 3478 provides in part:
"He who acquires an immovable in good faith and by just title prescribes for it in ten years."
Article 3479 provides:
"To acquire the ownership of immovables by the species of prescription which forms the subject of the present paragraph, four conditions must concur:
1. Good faith on the part of the possessor.
2. A title which shall be legal, and sufficient to transfer the property.
3. Possession during the time required by law, which possession must be accompanied by the incidents hereafter required.
4. And finally an object which may be acquired by prescription."
It is admitted that the defendant and his mother have been in possession for over ten years; this satisfies condition 3 of C.C. Art. 3479. It is not contended that immovables may not be acquired by prescriptions; this satisfies condition 4. We are therefore concerned only with conditions 1 and 2, that is, good faith and legal and sufficient title.
Good faith is defined in Civil Code Article 3451 as follows:
"The possessor in good faith is he who has just reason to believe himself the master of the thing which he possesses, although he may not be in fact; as happens to him who buys a thing which he supposes to belong to the person selling it to him, but which, in fact, belongs to another."
Civil Code Article 3481 provides:
"Good faith is always presumed in matters of prescription; and he who alleges bad faith in the possessor, must prove it."
Defendant's mother purchased a sizeable tract of land on July 26, 1955, part of which was described as "A certain tract of land, together with all buildings and improvements thereon and thereto belonging, situated in the Parish of Ascension, about three miles South of the site of Old Galvez Town, and known and general (sic) referred to as the Lusk or Adam Sides tract of land, and containing 169.35 acres, more or less, and being more particularly described as being situated in Section 49 Township 8 South Range 3 East, and in Section 37, Township 9 South, Range 3 East, Southeastern District of Louisiana, and being the westerly portions of said Sections, and being bounded, by now or formerly as follows: North by Walker A. Kelly; East by Estate of H. A. Morgan, South by Estate of H. A. Morgan and S. H. Parker; West by S. H. Parker, L. P. St. Amant and Robert E. Lee Mayer." (Emphasis supplied)
Defendant-appellant took possession of the land and placed cattle on the disputed tract immediately after the act of sale was completed. In 1956 defendant procured the services of a surveyor to survey his mother's holdings preparatory to erecting fences. After some investigation, the surveyor told defendant-appellant that there might be another claimant to the land. The surveyor was given an extra $100 to check out the title to the disputed tract. A dispute arises as to what, if anything, defendant-appellant was told. In any event, the surveyor's map, filed October 19, 1956, indicates that the disputed tract belonged to the mother. A suit was filed in 1958 by the Morgan faction, in essence, contending ownership of the tract. However, this suit was subsequently dismissed because of abandonment.[1] On June 27, 1967, defendant-appellant purchased the disputed property from his mother.
The trial court held that defendant-appellant was in bad faith for three reasons:
1. He was put on notice by the surveyor in 1956 that the Morgans claimed the property.
*317 2. He knew of the 1958 Morgan suit, and their claim to the property before he purchased it from his mother in 1967.
3. "He had a title examination made prior to his purchase in his mother's name, and even a very cursory title examination must have revealed that (1) the parish map hanging on the wall in the conveyance office shows the West Half of Section 37 as belonging to H. Arthur Morgan, (2) the assessor was assessing the West Half of Section 37 to the Morgans who were paying the taxes thereon, and (3) the Morgan property referred to in the defendant's description as being the boundary of his tract specifically included title to the West Half of Section 37."
Reasons one and two are contrary to established law. Knowledge of the Morgan's claim after the July 26, 1955, purchase is irrelevant in considering Mrs. Devall's good faith. Louisiana Civil Code Article 3482 expressly provides that, "It is sufficient if the possession has commenced in good faith; and if the possession should afterwards be held in bad faith, that shall not prevent the prescription." Furthermore, Devall's knowledge of any defect in title becomes immaterial if Mrs. Devall was in good faith at the time of her purchase. Devall v. Choppin, 15 La.Ann. 566 (1840); Brewster v. Hewes, 113 La. 45, 36 So. 883 (1904); Vance v. Ellerbe, 150 La. 388,90 So. 735 (1922).
Therefore, the real issue as to good faith, is whether or not defendant-appellant or his mother[2] knew of the Morgans' claim prior to the act of sale. As stated above, the trial judge found bad faith because of a title examination before the sale.
A person is not required to examine public records and thus determine validity of title to immovable property he contemplates purchasing as a condition precedent to good faith. Board of Commissioners of the Port of New Orleans v. Delacroix Corporation, 274 So.2d 745 (La.App. 4th Cir. 1973). But if he does make a title check he is charged with what the title check shows.
The record does not support the conclusion that a title examination was made prior to the purchase. The only hint that there was is found in defendant-appellant's answers to questions propounded by the trial judge:
JUDGE: "But you didn't make any investigation to determine whether or not that claim was good?
DEVALL: "Well, I had figured I had went to the full end of the law. I had spent money to have it surveyed. I had spent money to have it looked up. And I was spending money buying it. So that's as far as I knew I could go.
JUDGE: "Now, you say spend money having it looked up. You mean what you paid the surveyor?
DEVALL: "Yeah, I had to . . . yeah, I had to cough up another $100 there. Had to come back over.
JUDGE: "Did you pay an attorney to make a title examination?
DEVALL: "Yeah, I paid."
The question as to payment to an attorney is found amidst repeated questioning as to the surveyor's title check. It is obvious that defendant-appellant was not referring to an attorney's title examination, but to the surveyor's title check which was made over a year after the purchase. Why would defendant-appellant have paid a surveyor an extra $100 in 1956 for a title check if an attorney had already examined the title in 1955? Furthermore, there is no evidence whatsoever as to when the attorney's title examination was made and the burden of proof was on plaintiffs-appellee to show the "alleged" examinations was *318 made before the act of sale. See Sarpy v. Kliebert, 250 So.2d 182 (La.App. 1st Cir. 1971); C.C. Art. 3481.
We therefore conclude that plaintiffs-appellees have not overcome the presumption of good faith established by Civil Code Article 3481 and that defendant-appellant and his mother were in good faith when the tract was purchased in 1955.[3]

POSSESSION BY GOOD TITLE
The Civil Code articles setting forth the requirements for just title provide as follows:
Article 3484:
"By the term just title, in cases of prescription, we do not understand that which the possessor may have derived from the true owner, for then no true prescription would be necessary, but a title which the possessor may have received from any person whom he honestly believed to be the real owner, provided the title were such as to transfer the ownership of the property."
Article 3485:
"And in this case, by the phrase transfer the ownership of the property, we understand not such a title, as shall have really transferred the ownership of the property, but a title which by its nature, would have been sufficient to transfer the ownership of the property, provided it had been derived from the real owners, such as a sale, exchange, legacy or donation. "Thus, prescription could not be acquired under a title resulting from a lease or loan, because these contracts do not transfer the ownership of the property."
Article 3486:
"It is necessary besides:
1. That the title be valid in point of form; for if the possession commenced by a title void in that respect, it can not serve as a foundation for prescription.
2. That the title be certain; thus, every possessor, who can not fix exactly the origin of his possession, can not prescribe.
3. That the title be proved; for as it consists in a fact, it is not presumed, and every man who founds his title on a written instrument must produce it, or prove the contents, if it be lost."
Plaintiffs-appellees contend defendant-appellant's mother did not possess by just title because her title is not certain, or definite since the property description of an author-in-title[4] is allegedly based entirely on the location of an oak tree which is impossible to find, the description of one of his authors-in-title refers to land in Section 27 instead of 37; and the defendant-appellant's description refers to Morgan property as being its southern boundary.
Generally, for a party to acquire title, the description in his deed must be such that the property intended to be conveyed can be located and identified. The description must appear within the four corners of the instrument itself, or the deed should refer to some map, plat or deed as part of the description, so that the identity of the property conveyed is definite and certain. Where the deed is partially defective *319 or erroneous as to description, it is nevertheless susceptible of conveying property provided the property intended to be transferred can be ascertained with certainty with the aid of such extrinsic evidence as is admissible under the rules of evidence. J. H. Jenkins Contractors, Inc. v. Farriel, 246 So.2d 340 (La.App. 1st Cir. 1971); Cupples v. Harris, La., 11 So.2d 609 (1942). Finally, a deed sufficient to convey property as between the parties is also sufficient to support a claim of acquisitive prescription. Authement v. Theriot, 292 So.2d 319 (La.App. 1st Cir. 1974).
The title of defendant-appellant and his authors-in-title meet these requirements. Contrary to the contentions of plaintiffs-appellees, none of the title descriptions in defendant-appellant's chain of title is dependent on the location of an oak tree.
All the title descriptions throughout the chain refer to the land as the Adam Sides or Lusk tract. Attached to the 1946 sale from Ida Borman Banta to Camille John is a "true and literal exemplification of the record on file" in the State Land Office of a patent granted to Adam Sides. This exemplification shows that Sides property was patented in 1812, consisting of 338.68 acres measuring ten arpents by forty arpents in Section 49, Township 8 South, Range 3 East and Section 37, Township 9 South Range 3, East. The plat on the grant unmistakably shows that Sides was patented a full 94.03 acres in Section 37. Analysis of this patent leads to the conclusion that the Sides' patent includes all of Section 37.[5] Therefore, in spite of a technical typographical error in one of defendant-appellant's authors-in-title, the record indicates that defendant-appellant's authors-in-title actually had title to all of Section 37.
Furthermore, the emphasis that the trial judge and plaintiffs-appellees place on defendant-appellant's title listing Morgan property as its southern boundary is not well-founded. The titles refer to the tract of land as being bound on the "South by the Estate of H. A. Morgan and S. H. Parker; West by S. H. Parker . . .".
The maps in evidence show the general layout of the property to be as follows:

*320 Had it been intended to convey none of Section 37, there could have been no contiguity of lands owned by S. H. Parker (evidently now J. LeBeau, as shown on the maps).[6] The reference to lands of Estate of Morgan and S. H. Parker leads to the conclusion that the sale of all of the west half of Section 37 was intended.
Therefore, we conclude that defendant-appellant's mother possessed just title to the West-Half of Section 37.
Because we find the requisite good faith and just title we find that defendant-appellant's mother acquired the West-Half of Section 37, Township 9 South, Range 3 East, Southeastern District of Louisiana, in Ascension Parish, by ten year acquisitive prescription.
For the above and foregoing reasons we reverse and render.
It Is Therefore Ordered, Adjudged and Decreed that judgment be rendered in favor of defendant, James A. Devall, and against plaintiffs, Bishop Homes, Inc. and Robert Leland Morgan, declaring James A. Devall to be owner and titleholder of the following described property:
"A certain tract or parcel of ground, together with all buildings and improvements thereon, shown on a `Map Showing Survey of Tracts `A', `B', `C', `D', `E' and `F', Located in Section 49, Township 8 South, Range 3 East, and Sections 37 and 2, Township 9 South, Range 3 East, Southeastern District of Louisiana, in the Parish of Ascension, Louisiana, for H. Arthur Morgan Estate,' said map having been prepared by Joseph I. Tumey, C.E. dates Baton Rouge, Louisiana, March 14, 1961 (a copy of said map being on file and of record in the official records of Ascension Parish, Louisiana) as TRACT `F'; "Said tract `F' being more particularly described according to said map as containing forty-eight and 1 1/10 (48.1) acres, and being the West One-Half (W ½) of Section 37, Township 9 South, Range 3 East, Southeastern District of Louisiana in Ascension Parish."
REVERSED AND RENDERED.
NOTES
[1] The filing of this suit did not interrupt prescription. Louisiana Civil Code Article 3519 provides "If the plaintiff in this case, after having made his demand, abandons, voluntarily dismisses, or fails to prosecute it at the trial, the interruption is considered as never having happened."
[2] Defendant-appellant contends that the property was originally purchased in his mother's name solely for his interest, and that he was the true purchaser in the 1955 sale. We find that defendant-appellant did not sufficiently prove this contention. In any event, he was acting as his mother's agent in the transaction. Therefore under agency principles, she would be bound by any knowledge he might have had of the Morgans' claim prior to the act of sale.
[3] Because of this finding, we do not find it necessary to discuss the good faith of Mrs. Devall's predecessors in title.
[4] "A certain piece or parcel of real estate in the Parish of Ascension, Louisiana, situated about three (3) miles south of the site of Old Galveztown, and known and generally referred to as the "LUSK" or "ADAM SIDES" tract of land, and according to the survey of B. Lafon, dated at Galvestown, La., on the 16th day of Nov. 1803, said tract of land being designated as follows, to-wit: As a starting point start at a certain black or pin oak, said black or pin oak being numbered ninety-six (96) on the map showing the field notes of Robert Boyd, D.S., made on the 26th day of December, 1871, and from that point running south east forty arpents, twelve degrees, ___then running north east ten arpents, seventy-eight degrees, ___then running north west forty arpents, twelve degrees, and there striking an ash tree as a corner post, then running south west ten arpents, seventy-eight degrees to the pin or black oak being the point of starting. At the time of said survey said land being in the County of Iberville, Louisiana. Now being situated in Townships Eight (8) and Nine (9) Three (3) East, S.E.D.E. of River St. Helena Meridian in Ascension Parish, Louisiana."
[5] Plaintiff-appellees' own abstract shows Sides as patentee of Section 37.
[6] Although the present maps do not show the land of Parker, it is obvious that the tract formerly owner by Parker is what is known as the LeBeau tract. This is necessarily so by implication because the Morgan and Parker tracts were contiguous (both tracts bounded the property in defendant-appellant's chain on the same side), and the Morgan and LeBeau tracts are contiguous.