# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 19-102


**JODY STELLY**

**VERSUS**

**JOSEPH RODERICK BERGERON, ET AL**


**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 17-C-2680-C
HONORABLE ALONZO HARRIS, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**D. KENT SAVOIE**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Elizabeth A. Pickett, D. Kent Savoie, and Candyce G. Perret, Judges.


**REVERSED IN PART, RENDERED IN PART, VACATED IN PART, AND REMANDED WITH INSTRUCTIONS**

**Peter F. Caviness**
**Falgoust and Caviness, LLP**
**505 S. Court St.**
**P.O. Box 1450**
**Opelousas, LA 70571**
**(337) 942-5812**
**COUNSEL FOR PLAINTIFF/APPELLEE/APPELLANT:**
    **Jody Stelly**

**Bruce A. Gaudin**
**100 W. Bellevue St.**
**Opelousas, LA 70570**
**(337) 948-3818**
**COUNSEL FOR DEFENDANTS/APPELLANTS/APPELLEES:**
    **Joseph Roderick Bergeron**
    **Janice Fontenot Bergeron**
    **Rachel Bergeron Fontenot**

**SAVOIE, Judge.**

This matter involves a property dispute over whether a trailer home and improvements located on Defendants' property encroaches on Plaintiff's property. At trial, both sides submitted expert testimony and evidence from surveyors whose opinions as to the boundary differed by about twenty feet. Ultimately, the trial court split the difference and set the boundary ten feet south of the boundary proposed by Plaintiff's experts. The boundary set by the trial court resulted in a finding that Defendants' trailer home encroaches Plaintiff's property by 0.9 feet and the canopy on the trailer home encroaches by 0.1 foot. Defendants appealed, and Plaintiff answered the appeal.

For the following reasons, we reverse the trial court's judgment in part, render in part, vacate in part, and remand the matter for proceedings in accordance with our findings herein.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 4, 1973, the heirs of Arthur Lanclos entered into an Act of Voluntary Partition dividing an 18-arpent property into eight lots. The property is described as being located "at Prairie Gros Chavreuil, in St. Landry Parish," as having 4 ½ arpents front and 4 arpents in depth, and as being bounded as follows: North, by Antoine Rivette and Ernest Babineaux (formerly Adolph Lanclos and heirs); South, by Deneze Moreau, Larry Lanclos, Eugene Lanclos (formerly Paul and Antila Lalonde); East: by Offie Lalonde (Formerly Angelos Lalonde); West, by Leonia C. Lanclos (formerly Ignace Chautin).

The 1973 Act of Partition also states that the Arthur Lanclos heirs "have agreed to divide said property into eight (8) lots, all of which is more fully shown on a Sketch made by Melvin Lalonde dated June 27, 1973 [hereinafter, "the Lalonde

Sketch"]." The Act of Partition indicates that each of the eight lots contains 1.76 acres and are all located in "Section 25. T-6-S. R-5-E. St. Landry Parish. La." This totals 14.07 acres (hereinafter referred to as "the 14.07-acre tract").

The Lalonde Sketch suggests that the partitioned property is a rectangular tract 824 feet along the perimeter lines running due west and east, and 744 feet along the perimeter lines running due north and south. It further states "public road" on the western, southern, and eastern perimeter lines of the entire tract, suggesting that the roads also run due west and east along the southern perimeter, and due north and south along the western and eastern perimeters. The sketch also divides the 14.07-acre tract into eight rectangular lots, each containing 1.76 acres. The lines on the sketch running west and east are parallel with one another, the lines running north and south are parallel with one another, and the west-east lines intersect with the north-south lines at 90-degree angles.

The Lalonde Sketch divides the northern half of the 14.07-acre tract into four contiguous rectangular lots (Lots 1-4), with each lot measuring 412 feet along the west-east lines, and 186 feet along the north-south lines. Lot 1 is in the northwest corner of the tract, Lot 2 borders Lot 1 on the east and is the northeast corner of the 14.07-acre tract, Lot 3 is directly south of Lot 1, and Lot 4 is directly south of Lot 2.

The Lalonde Sketch also divides the southern half of the 14.07-acre tract into four contiguous rectangular lots (Lots 5-8), each measuring 206 feet along the west-east lines and 372 feet along the north-south lines. Lots 5 and 6 are directly south of Lot 3, and Lots 7 and 8 are directly south of lot 4. According to the sketch, there is a common corner where Lots 3, 4, 6, and 7 meet.

Primarily at issue in this matter is the boundary between Lot 5, which is the southwest corner of the 14.07-acre tract and currently owned by Plaintiff, Jody Stelly,

2

and Lot 3, which is north of Lot 5 and currently owned by Defendants, Joseph and Janice Bergeron. The northern boundary of Lot 5 is part of the southern boundary of Lot 3.

Defendants, Joseph and Janice Bergeron, acquired Lot 3 pursuant to a Cash Sale on February 17, 1999. The property is described as containing 1.76 acres in Section 25, T-6-S, R-5-E, in St. Landry Parish, "and being identified as LOT #3 on a sketch by Melvin Lalonde, dated June 27, 1973[.]" It further states

> Lot #3 measures 186 feet on the East side of Bailey Road by a depth of 412 feet, and is bounded on the North by lot #1 (formerly Bertrand Lanclos, now Joseph Roderick Bergeron); South by Lots 5 and 6; East by Lot #4 (Anna Lanclos); and West by Bailey Road.

In 1997, prior to acquiring Lot 3, the Bergerons acquired a .592-acre tract of land that was part of a larger tract of land located directly north of Lot 1 of the 14.07-acre tract at issue. According to Defendants, the southwest corner of the .592-acre tract is also the northwest corner of Lot 1. A survey related to that transaction, dated May 19, 1997, which was prepared by Robert Wolfe, Jr. with Morgan Goudeau & Associates, indicates an iron rod was placed at the southwest corner of the .592 acre tract, and suggests that point is on the boundary line with Lot 1. The Bergerons built a house on the .592-acre tract and have resided there since. They subsequently acquired Lot 3 at issue herein on February 17, 1999, and Lot 1 on March 29, 1999.

According to Mr. Bergeron and his daughter, Rachel Bergeron, Rachel moved a trailer home onto Lot 3 in 2003, near, but not over, the southern boundary with Lot 5. In 2005, the original trailer home was replaced with a larger one in the same location, and that trailer home is still there today. The front of the trailer home faces Bailey Road, which borders Lot 3 to the west. A culvert was installed prior to the first trailer home in 2003 along Bailey Road, and a concrete slab and canopy

driveway were built between the trailer home and Bailey Road. The canopy is the length of the trailer home. A hurricane fence was also installed in the backyard, which is to the west of the trailer home. Rachel testified that she routinely mows the grass beyond the fence line and "a few feet" to the south of the trailer.

Mr. Bergeron indicated that he based the placement of the improvements on Lot 3 by measuring 186 feet south along Bailey Road from the southwest corner of the .592-acre tract, which is the length of Lot 1 per the Lalonde Sketch, and then another 186 feet south from that point, which is the length of Lot 3 per the Lalonde Sketch. He indicated that he measured the distance with a tape measure and also had two or three other people measure with survey equipment. Also according to Mr. Bergeron, Mr. Lalonde, who was his wife's uncle, "showed us exactly where the property was at" prior to installing the culvert.

At the time the trailer home and other improvements were added by the Bergerons, Lot 5 was owned by Mr. Stelly's uncle, who had acquired the property in 1990. According to the Bergerons, Mr. Stelly's uncle never complained about the trailer home or any of the improvements on Lot 3.

Mr. Stelly acquired Lot 5 on February 5, 2009, pursuant to an Act of Cash Sale, which describes the property as containing 1.76 acres in Section 25, T-6-S, R-5-E, in St. Landry Parish, "and more particularly identified as LOT FIVE (5) on a sketch by Melvin Lalonde dated June 27, 1973." It further describes the lot as "being bounded now, or formerly, as follows: North by lot 3 of said sketch; South by Public Road (Lanclos Road); East by Lot 6 of said sketch; and West by Public Road (Bailey Road), all as more clearly shown on the herein referred sketch." Mr. Stelly testified that at the time he acquired the property, there was a shop building on the southern portion of the property near Lanclos road, but that it was otherwise an empty lot. Mr.

4

Stelly does not live on Lot 5. According to Mr. Stelly, when he acquired the property from his uncle in 2009, his uncle showed him the boundary line, suggested that the Bergerons' trailer home was over their property line, and indicated that he was "too old" to fight the Bergerons about it.

In 2016, after Mr. Stelly decided he wanted to have a home built on Lot 5, he hired Brandon "Shane" Breaux with Morgan Goudeau & Associates to create a survey. According to a Plat of Survey dated September 12, 2016, (herein after "the Breaux Survey"), the trailer home on the Bergeron's property (Lot 3) encroaches onto Mr. Stelly's property (Lot 5), thus resulting in the current dispute between the parties.

On June 5, 2017, Mr. Stelly filed a Petition to Fix Boundary, for Injunctive Relief and For Damages, naming Mr. and Mrs. Bergeron, along with Rachel Bergeron, as Defendants. Therein, he asked the trial court to determine the boundary between Lots 3 and 5, issue injunctive relief regarding the trailer home, and award him with damages for trespass and conversion. The Bergeron Defendants filed an answer and supplemental answer alleging that the trailer home did not encroach onto Lot 5, and alternatively, that they acquired any encroached-upon land on Lot 5 by acquisitive prescription of ten years in accordance with La.Civ.Code arts. 3473, et. seq.

A trial on the merits was held on January 4, 2018. Mr. Stelly relied on the Breaux Survey's depiction of the boundary between Lot 3 and Lot 5, whereas the Bergeron Defendants relied on a Plat of Survey prepared by Paul Briley with Southern Surveyors, LLC (hereinafter "the Briley Survey"). The Briley Survey depicts the subject boundary line as being about twenty feet to the south of the boundary proposed by the Breaux Survey, such that the trailer home and

improvements do not encroach onto Lot 5. The Briley Survey also reflects the boundary line as suggested by the Breaux Survey and identifies the disputed area as the "area of concern."

At trial, Mr. Stelly elicited expert testimony from Mr. Robert Wolfe, Jr., who was Mr. Breaux's supervisor at the time the Breaux Survey was completed, as well as from Mr. Breaux. Defendants elicited expert testimony from Mr. Briley. The experts' trial testimony suggested that the twenty-foot discrepancy in their opinions as to the boundary between Lots 3 and 5 resulted from different methodologies, primarily involving the starting point of the measurements, as well as the fact that the public road (Lanclos Road) south of Lot 5 does not lie on a due west-east bearing as depicted on the Lalonde Sketch, but rather slightly deviates to the southwest.

Mr. Wolfe and Mr. Breaux explained that the Breaux Survey relied on by Mr. Stelly was created by first determining the northern and eastern boundaries of the original 14.07-acre property shown in the Lalonde Sketch (i.e. the boundaries of Lot 2). This was determined by a prior survey prepared by Morgan Goudeau & Associates on September 13, 1994, for Edna Babineaux regarding the property directly north of, and bordering, Lot 2 on the Lalonde Sketch ("the Babineaux Survey"). The southern boundary line of the Babineaux property is the northern boundary of Lot 2. According to Mr. Wolfe, this boundary was determined by a fence that had been there for "many years." The Babineaux survey indicates "PK nails" and iron rods were set marking various measuring points, including the points used in connection with the Breaux Survey to calculate the northern boundary of Lot 2. The boundary is a line running due west-east, beginning at the midpoint of La La Road, which is east of the property.

6

Mr. Breaux and/or his crew discovered the previously placed PK nails and iron rods in connection with their efforts to survey Lot 5. From this previously established boundary, they were able to project the northern boundary line for Lot 2 westward to establish the northern boundary of the entire 14.07-acre property on the Lalonde Sketch. From that line, they were then able to retrace the remaining boundary lines of the 14.07-acre property, including the boundary between Lots 3 and 5.

However, according to Mr. Wolfe's and Mr. Breaux's testimony at trial, because the Lalonde Sketch depicted perfectly rectangular lots, whereas Lanclos Road on the southern boundary of the property actually deviated to the southwest on Lot 5, using the measurements on the Lalonde Sketch resulted in a small tract of land between the southern boundary of Lot 5 (Mr. Stelly's property) and Lanclos Road that is not actually a part of Lot 5. This "gap" is not shown on the Breaux Survey, but is shown on the Briley Survey, which reflects both surveyors' measurements. At trial, Mr. Stelly testified that he was not aware "until yesterday" that he did not own the frontage along Lanclos Road. Mr. Wolfe and Mr. Breaux also testified that the southwest deviation in Lanclos road is not obvious from the ground.

Defendants' expert, Mr. Briley, on the other hand, calculated the boundary between Lots 3 and 5 by projecting the PK nail placed on La La Road on the eastern boundary of the 14.07-acre tract (Lot 2) in connection with Babineaux Survey westward to the southwest corner of the .592-acre tract acquired by Mr. Bergeron in 1997 as reflected in the 1997 survey prepared by Morgan Goudeaux & Associates. Mr. Briley determined that that point was the northwest corner of Lot 1. He then projected the western boundary southward to determine the boundary between Lots 3 and 5.

Because Lanclos Road deviates to the southwest in Lot 5, rather than running due west-east, and because the point Mr. Briley used as the northwest corner of the 14.07-acre tract (and of Lot 1) was not along the same west-east bearing as the PK nail on the northeast corner of the property, Mr. Briley's plat shows lots whose west-east lines deviate at an angle to the southwest, and which do not intersect the north-south lines at 90-degree angles. The Briley plat also shows some overlap between Lots 3, 4, 6, and 7, rather than a common corner suggested by the Lalonde Sketch.

Mr. Breaux testified that he and his crew had initially used the same point on the .592-acre tract of property relied upon by Mr. Briley when attempting to determine the boundary line. In August 2016, they placed stakes and flags along the boundary line they determined by using these points. A portion of the Bergerons' hurricane fence was over this line; however, no part of the trailer home or other improvements were. The Bergerons testified they thereafter voluntarily moved the fence so as not to encroach this line.

However, according to Mr. Breaux, his calculations using the southwest corner of the .592-acre tract as the northwest corner of Lot 3 did not align with the Lalonde Sketch. Rather, they created a deviation in the southwest boundary line of the 14.07-acre tract of about twenty feet, such that it did not run due west-east as depicted on the Lalonde Sketch and distorted the boundary lines on all eight lots. Therefore, Mr. Breaux did not prepare a survey using these points. Rather, Mr. Breaux instructed his crew to return to the property and start at the northern and eastern boundaries of Lot 2 identified in the Babineaux Survey and project the northern boundary westward. They did so, and the stakes and flags initially placed on Lot 3 were moved several feet, and suggested that a portion of the trailer home encroached onto Lot 5. The survey relied upon by Mr. Stelly was thereafter prepared.

Mr. Breaux and Mr. Wolfe also testified that using the points on the Babineaux survey to determine the boundaries of the 14.07-acre tract resulted in their conclusion that the southwest corner of the .592-acre tract acquired by Mr. Bergeron was not actually the northwest corner of the 14.07-acre tract at issue. Rather, it was about twenty feet south of the northwest corner and actually part of Lot 1. Mr. Wolfe testified that the 1997 plat created in connection with Mr. Bergeron's 1997 acquisition of the .592-acre tract was done solely at the direction of the parties to the transaction, who simply indicated where they wanted the .592-acre lot to be. Mr. Wolfe indicated that when preparing the 1997 plat, no other surveys were used as a reference because "we were just told we are going to put the lot right here[.]" Mr. Briley, on the other hand, testified that the methodology suggested by Mr. Wolfe in preparing the 1997 survey is not consistent with generally accepted methods, and anyone relying on the 1997 survey would assume that it was accurate.

Following trial, the trial court issued written reasons for ruling, which stated as follows:

> Both experts made good points in his case. However, the Court took issues with the testimony of both experts to some extent.
>
> As to Mr. Wolfe, the Court was sort of puzzled about testimony of the land owner telling him where to place the line on the .592 acre tract as shown in D-1, Exhibit B.
>
> As to Mr. Briley's testimony, the Court is not sure as to whether it was the intent from the Lalonde sketch to use the three public roads as boundaries. The Lalonde sketch does look like a square box and does not show much of a dip on the southwest end.
>
> The Court finds that both boundaries, as shown in [the Briley Plat] D-2, are not exactly correct.
>
> . . . .

> The Court finds that the Breaux survey marked in red on [the Briley survey] should be 10 feet on the northwest corner and 7.4 feet on the northeast corner of Lot 5, meaning that the lines should come down from the trailer marked in red . . . from 20 feet to 10 feet and from 14 feet to 7.4 feet.

The written reasons for ruling further indicated that the parties would have thirty days to prepare a new survey in accordance with its findings, and that if the trailer home encroached onto Mr. Stelly's property (Lot 5) based upon the new survey, Defendants were to either move the trailer, or pay $3,000 to allow it to remain as-is. However, the ruling reflected that Mr. Stelly had the right to reject the $3,000 and require Defendants to move the trailer.

Thereafter, Mr. Briley prepared a Plat of Survey Showing A Boundary Line Adjustment dated July 30, 2018. The boundary lines for Lot 5 are as initially proposed on the Breaux Survey, except that the boundary between Lots 3 and 5 as initially proposed was moved south in accordance with the trial court's ruling. Therefore, the plat shows a gap between the southern boundary of Lot 5 and Lanclos Road belonging to an "unknown owner," as suggested by Breaux's testimony. The 2018 survey also shows that southeast corner of the trailer encroaches onto Lot 5 by 0.9 feet and that the concrete slab and awning encroaches onto Lot 5 by 0.1 feet. With the exception of Lot 5, the remaining boundaries shown on the new plat are in accordance with those initially proposed by the Briley Survey. The judgment signed by the trial court fixed and established the boundary line between Lot 3 and Lot 5 as the "Boundary established by Civil Docket No. 17-C-2680-D" reflected on the plat dated July 30, 2018.[1]

---

[1] We note that the trial court's judgment in this case does not set, or otherwise affect, the boundary lines of any other lots within the 14.07-acre tract, although the July 30, 2018 survey attached to the judgment suggests the boundary lines of the other lots. At issue in this case is only the boundary line between Lot 3 and Lot 5.

The trial court signed a judgment dated August 20, 2018, which ordered that the boundary between Lots 3 and 5 was as depicted in the survey plat prepared by Mr. Briley on July 30, 2018, and attached thereto. It further issued permanent injunctive relief against the Bergerons, which required them to remove the trailer or any other object located on Mr. Stelly's property within 90 days.

Thereafter, the Bergerons moved for a new trial arguing that the trial court failed to consider their alternative argument that they had acquired the encroached upon portion of Lot 5 by ten-year acquisitive prescription. They also noted that since the trial court rejected both sides' experts, they hired a third surveyor, Michael Mayeaux, to prepare a new survey, and they urged the trial court to consider this survey in connection with a new trial. According to the Bergerons, the Mayeaux Survey shows that the trailer does not encroach onto Lot 5.

The trial court denied the Bergerons' motion for new trial, and the Bergerons appealed. Mr. Stelly filed an answer to Defendants' appeal.

## ASSIGNMENTS OF ERROR

The Bergerons assert the following as assignments of error:

1. The trial judge was clearly wrong when he arbitrarily established the boundary line between the Bergeron tract and the Stelly tract, creating a new boundary line that was located approximately 10 feet North of the line shown [in] the Briley plat and 10 feet South of the line shown [in] the Breaux plat.

2. The trial judge was clearly wrong when he failed to consider the uncontradicted evidence presented at trial that proved that the defendants had exercised uninterrupted possession of the disputed area for more than 10 years, thus establishing ownership by good faith acquisitive prescription.

3. The trial judge was clearly wrong to deny the Motion for New Trial, where the Mayeux plat revealed errors in both the Briley and Breaux plats, both which had been rejected by the trial judge, and where the Mayeux plat correctly followed the hierarchy of calls that the other plats do not.

11

In his answer to the Bergerons' appeal, Mr. Stelly asserts the following as an assignment of error:

1) The Trial Court erred in failing to fix the boundary between the two (2) properties in accordance with the Plat of Survey prepared by Brandon S. Breaux of Morgan Goudeau and Associates on 9/12/2016 . . . and in accordance with the testimony of Brandon S. Breaux and Robert Wolfe, Jr.

## ANALYSIS

*Motion for New Trial*

We first consider the Bergerons' third assignment of error regarding the trial court's denial of their motion for new trial. They argue that the motion for new trial should have been granted to allow consideration of the Mayeaux Survey, which was prepared after the trial court's rejection of both the Breaux and Briley surveys and was not initially submitted during trial.

The standard of review for the denial of a motion for new trial is abuse of discretion. *Davis v. Coregis Ins. Co.*, 00-475 (La.App. 3 Cir. 12/27/00), 789 So.2d 7, *writ denied*, 01-292 (La. 3/30/01), 788 So.2d 1192. Louisiana Code of Civil Procedure Article 1972 states, in part, that a new trial shall be granted "[w]hen the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained during the trial."

> In order to meet his or her burden of proof on a motion for new trial on the basis of newly-discovered evidence, the moving party must prove: (1) that the evidence was discovered after the trial; (2) that the new evidence is not cumulative; (3) that the new evidence would tend to change the result of the case; and (4) that the new evidence could not have been discovered with due diligence before the trial was completed.

*Holloway Drilling Equip., Inc. v. Bodin*, 12-355, pp. 12-13 (La.App. 3 Cir. 11/7/12), 107 So.3d 699, 709-710.

In the instant case, there is no evidence in the record suggesting that the Bergerons could not have obtained the Mayeaux Survey before trial was completed. Therefore, we find no abuse of discretion in the trial court's denial of the motion for new trial.

*Boundary Between Lot 3 and Lot 5*

The applicable standard of review as to the merits of this case is set forth in *Monlezun v. Lyon Interests, Inc.*, 11-576, pp. 4-5 (La.App. 3 Cir. 11/2/11), 76 So.3d 628, 632-633:

> Louisiana appellate courts review both law and facts. *S.J. v. Lafayette Parish Sch. Bd.*, 09-2195 (La. 7/6/10), 41 So.3d 1119. Factual findings are reviewed under the "manifestly erroneous or clearly wrong" standard. *Id*. at 1127. In order to reverse a factual determination of the trial court, the appellate court must first find that a reasonable factual basis does not exist for the finding and that the record establishes that the finding is clearly wrong. *Id*. In cases where there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous. *Id*. "However, where documents or objective evidence so contradict a witness's story, or the story itself is so internally inconsistent or implausible on its face that a reasonable fact finder would not credit the witness's story, a reviewing court may well find manifest error." *Id*. at 1127.
>
> If the court of appeal finds that the trial court committed a manifest error of fact or a reversible error of law, the appellate court must then conduct a de novo review of the record and render a judgment on the merits. *Siverd v. Permanent Gen. Ins. Co*., 05-973 (La. 2/22/06), 922 So.2d 497. In making such a finding, the appellate court "must do more than simply review the record for some evidence which supports or controverts the trial court's findings; it must instead review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous." *Id*. at 499. Thus, the appellate court may not reverse if the trial court's findings are reasonable in light of the record as a whole, even if the appellate court is convinced that it would have weighed the evidence differently if sitting as the trier of fact. *Id*.

We further keep in mind the following as set forth by *LeBlanc v. Allstate Insurance Co.*, 00-1128, p. 4 (La.App. 5 Cir. 11/28/00), 772 So.2d 400, 403, *writ denied,* 00-3522 (La. 2/9/01), 785 So.2d 831:

> If the fact finder does not reach an issue because of an earlier finding which disposes of the case, the appellate court, in reversing the earlier finding, must make a de novo determination of undecided issues from the facts presented in the record. *Austin v. Fibrebond Corp.*, 25,565 (La.App. 2 Cir. 2/23/94) 638 So.2d 1110; *Craven v. Universal Life Ins. Co.*, 95-1168 (La.App. 3 Cir. 3/6/96); 670 So.2d 1358, *writ denied*, 96-1332 (La. 9/27/96), 679 So.2d 1355. Generally, if the appellate court makes a finding that the trial court was manifestly erroneous or that there is a legal error and the record is, otherwise, complete, the appellate court should render judgment on the record. In such cases, the appellate court is not subject to the manifest error rule, but decides the case de novo. *Rosell v. ESCO*, [549 So.2d 840 (La.1989)]; *McLean v. Hunter*, 495 So.2d 1298 (La.1986).

With respect to actions seeking to establish the boundary between two properties, the civil code provides as follows: "The court shall fix the boundary according to the ownership of the parties; if neither party proves ownership, the boundary shall be fixed according to limits established by possession." La.Civ.Code art. 792. "When both parties rely on titles only, the boundary shall be fixed according to titles. When the parties trace their titles to a common author preference shall be given to the more ancient title." La.Civ.Code art. 793. "When a party proves acquisitive prescription, the boundary shall be fixed according to limits established by prescription rather than titles." La.Civ.Code art. 794.

After reviewing the record in its entirety, we initially find that the trial court was manifestly erroneous in determining the boundary between Lots 3 and 5 by splitting the difference between the two experts' opinions. There is no evidence in the record that supports the boundary line as fixed by the trial court. Therefore, we vacate the trial court's determination of the boundary of this matter and consider the record de novo.

Given the difference between the surveyors' interpretations of the boundary between Lots 3 and 5, we first consider the Bergerons' claim that, even if the trailer home and improvements encroached onto Lot 5 based upon the boundaries initially

intended by the Lalonde sketch, the Bergerons have acquired the land upon which they lie by ten years acquisitive prescription in accordance with La.Civ.Code art. 3473, et. seq.

The civil code states as follows with respect to ten-year acquisitive prescription: "The requisites for the acquisitive prescription of ten years are: possession of ten years, good faith, just title, and a thing susceptible of acquisition by prescription." La.Civ.Code art. 3475. "The possessor must have corporeal possession, or civil possession preceded by corporal possession, to acquire the thing by prescription." La.Civ.Code art. 3476. "The possession must be continuous, uninterrupted, peaceable, public, and unequivocal." *Id.* "[A] possessor is in good faith when he reasonably believes, in light of objective considerations, that he is owner of the thing he possesses." La.Civ.Code art. 3480. "Good faith is presumed. Neither error of fact nor error of law defeats this presumption." La.Civ.Code art. 3481.

Also, for purposes of acquisitive prescription, "[a] just title is a juridical act, such as a sale, exchange, or donation, sufficient to transfer ownership or another real right. The act must be written, valid in form, and filed for registry in the conveyance records of the parish in which the immovable is situated." La.Civ.Code art. 3483.

> For purposes of 10 years acquisitive prescription, a deed which describes the tract conveyed by its general name, its acreage and by bordering tracts is sufficient to convey just title for purposes of prescription. *Bishop Homes, Inc. v. Devall*, 336 So.2d 313 (La.App. 1st Cir. 1976), *writ denied*, 338 So.2d 1155 (La.1976). If the property intended to be conveyed is ascertainable with certainty by aid of admissible extrinsic evidence, the description is sufficient to support a plea of 10 years acquisitive prescription. *Authement v. Theriot*, 292 So.2d 319 (La.App. 1st Cir.1974); *Snelling v. Adair*, 196 La. 624, 199 So. 782 (1940).

15

*Schexneider v. Villejoin*, 493 So.2d 860, 864 (La.App. 3 Cir. 1986), *writ denied,* 496 So.2d 1045 (La.1986). See also *Barrois v. Panepinto*, 13-577, p. 2 (La.App. 4 Cir. 1/8/14), 133 So.3d 36, 37: "One must be able to identify and locate the property from the description in the deed itself or from other evidence which appears in the public record."

Pursuant to an Act of Cash Sale dated June 26, 1997, Mr. and Mrs. Bergeron acquired a .592-acre tract of land. The May 19, 1997 survey made part of that transaction reflected that this .592-acre tract was contiguous with, and directly north of, Lot 1 of the 14.07-acre tract depicted in the Lalonde Sketch. This survey also showed that the .592-acre tract measured 89.02 feet along a north-south line between two points marked with ½-inch iron rods along Bailey Road to the west of the property; the southernmost point being along the boundary with Lot 1. The Bergerons subsequently acquired Lot 3 and then Lot 1, pursuant to transactions incorporating the Lalonde Sketch. The Lalonde Sketch reflects that Lot 1 measures 186 feet on the north-south line along Bailey Road, and that Lot 3, which was contiguous with, and directly south of Lot 1, also measures 186 feet on the north-south line along Bailey Road. Lot 3 borders Lot 5 to the south.

Mr. Bergeron testified that in determining the boundary between Lot 3 and Lot 5 and the location of where to place his daughter's trailer home and related improvements, he and others physically measured 186 feet south from the southwestern point of his .592-acre tract, which was the length of Lot 1. He then measured another 186 feet south from that point to determine the southernmost point of Lot 3 along Bailey Road. Regardless of whether this was the actual boundary point intended by the Lalonde Sketch's reflected partition of the entire 14.07-acre tract into eight lots, we conclude that the Bergerons had just title to this point in

16

accordance with the conveyance records pertaining to their acquisitions of the .592-acre tract, Lot 1, and Lot 3.

The evidence further reflects that beginning in 2003, the Bergerons, as good faith possessors of the property, installed or built a culvert, covered driveway, a trailer home, and a hurricane fence along or north of the line they determined to be the boundary with Lot 5. Both Rachel's and Mr. Stelly's testimony also suggest that Rachel mowed the grass along that line, beyond the hurricane fence and trailer. The testimony and evidence from the surveyors is also undisputed that using the southwestern point of the .592-acre tract as the northwestern point of Lot 3, as the Bergerons did, results in a conclusion that neither the trailer home nor other improvements on Lot 3 encroach onto Lot 5.

The evidence was further undisputed that the Bergerons' maintained good faith possession continuously, peaceably, and unequivocally of the land on which the trailer home and improvements lies for over 10 years. There is no indication that the prior owner of Lot 5, who was Mr. Stelly's uncle, complained of the Bergerons' trailer or other improvements through the date Lot 5 was sold to Mr. Stelly in March 2009. Mr. Stelly did not file suit until June 5, 2017, after having a survey completed in September 2016.

Therefore, we conclude that the Bergerons have acquired the land on which the trailer home, canopy, and other related improvements are located by acquisitive prescription of ten years to any extent they are not on Lot 3 as initially intended by the Lalonde Sketch and 1973 partition on the 14.07-acre tract. We therefore reverse the injunctive relief in favor of Mr. Stelly as rendered by the trial court, and dismiss Mr. Stelly's claim for injunctive relief seeking the removal of the trailer home and improvements from his property, as well as his claim for damages for trespass and

17

conversion. We further remand the matter to the trial court for a determination of the boundary line between Lot 3 and Lot 5, which should include a consideration of land the Bergerons acquired by acquisitive prescription of ten years in accordance with La.Civ.Code art. 3473, et. seq.

## DECREE

For the reasons set forth above, we reverse the injunctive relief rendered by the trial court's judgment signed August 20, 2018, and dismiss Plaintiff's claim for injunctive relief seeking the removal of the trailer home and improvements from his property. We also dismiss Plaintiff's damages claims for trespass and conversion. We further vacate the trial court's determination of the boundary between Lots 3 and 5 and remand the matter for additional proceedings in accordance with our findings herein. Costs of these proceedings are assessed to Plaintiff, Jody Stelly.

**REVERSED IN PART, RENDERED IN PART, VACATED IN PART, AND REMANDED WITH INSTRUCTIONS**